NEUBORNE
DECLARATION

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
ALLIANCE FOR OPEN SOCIETY
INTERNATIONAL, INC. and OPEN SOCIETY
INSTITUTE,

                         Plaintiffs,

                                               DECLARATION OF
       -against-                                 BURT NEUBORNE

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT, *et al.*,

                        Defendants.
-----------------------------------------------------------------

       Burt Neuborne, an attorney duly admitted to practice before the Courts of the State of New York, and this Court, hereby affirms:

       1.     I am counsel to the plaintiffs, Alliance for Open Society International ("AOSI") and the Open Society Institute ("OSI"). AOSI is a Delaware not-for-profit corporation that is closely affiliated with, but legally separate from OSI, a charitable trust organized and existing under New York law. OSI is the principal United States-based foundation of the philanthropist George Soros and works to support a network of more than 30 Soros foundations operating in more than 60 countries around the world. Both AOSI and OSI are based in New York. Declaration of Aryeh Neier dated Sept. 13, 2005, ¶¶ 3, 8.

       2.     I make this declaration in support of an application by AOSI and OSI for preliminary injunctive relief precluding defendant United States Agency for International

Development ("USAID") from taking adverse action against AOSI or OSI premised on their non-USAID-funded speech and activities related to prostitution.

3. AOSI was established by OSI to coordinate and implement humanitarian aid programs in Central Asia designed to assist in the building of healthy, democratic societies. For more than a year and a half, AOSI, assisted by a substantial private grant from OSI of nearly $2.2 million, has successfully administered a program funded by USAID in Uzbekistan, Tajikistan and parts of Kyrgyzstan aimed at limiting the spread of injection drug use, which is the primary cause of the spread of HIV/AIDS in the region. All agree that AOSI has carried out its responsibilities under the USAID program in an exemplary manner. Declaration of Robert Kushen dated Sept. 16, 2005, ¶¶ 4-6, 9, 14.

4. However, the implementation by USAID of a Congressional provision governing HIV/AIDS grants has clouded the future of AOSI's participation in the struggle to combat the spread of HIV/AIDS in Central Asia.

5. The United States Leadership Against HIV/ AIDS, Tuberculosis and Malaria Act of 2003 ("the Global AIDS Act"), 22 U.S.C.A. sec. 7601 *et seq.*, provides, first, that no funds received under the Act may be spent on activities that "promote or advocate the legalization or practice of prostitution or sex trafficking," 22 U.S.C.A. sec. 7631(e) ("the government funds requirement"); and, second, that all grantees certify that they have adopted a policy "explicitly opposing prostitution and sex trafficking," 22 U.S.C.A. sec. 7631(f) ("the pledge requirement").

6. AOSI acknowledges an obligation to expend any funds received from USAID in compliance with Congressional restrictions and does not challenge the

Congressional ban on spending USAID funds on activities that "promote or advocate the legalization or practice of prostitution or sex trafficking" contained in section 7631(e).

7. The Congressional requirement in section 7631(f) that USAID grantees certify that they have adopted a policy "explicitly opposing prostitution" poses greater difficulty because of USAID's application of the provision to AOSI's private funds and, potentially, to the privately funded activities of OSI; the troubling ambiguity of the language; and the significant sanctions attached to violating the pledge.

8. For a year and a half, USAID refrained from applying the pledge requirement against U.S.-based organizations because the Department of Justice had warned that such an application would be unconstitutional. *See* Letter from Daniel Levin, U.S. Department of Justice, to Alex Azar, II, U.S. Department of Health and Human Services, dated September 20, 2004, attached to Declaration of Rebekah Diller dated Sept. 22, 2005 ("Diller Decl."), as Exhibit 7. However, once the Department of Justice issued a tepid supplementary opinion that plausible arguments existed in favor of applying the pledge to U.S.-based organizations, USAID changed course in June, 2005, issuing a directive that binds U.S.-based recipients. Acquisition and Assistance Policy Directive 05-04, attached to Diller Decl. as Ex. 5.

9. AOSI has adopted the following policy statement, which it believes complies with the mandate :

> AOSI and the Soros Foundations in Tajikistan and Kyrgyzstan believe that trafficking and sex work do harm both to the individuals directly involved and to others in various ways. AOSI and the Soros Foundations in Tajikistan and Kyrgyzstan do not promote or advocate such activities. Rather, our approach is to try to reduce the harms caused by disseminating credible information on questions such as the prevention of disease, and by providing direct public health assistance to vulnerable populations. ...

3

Kushen Decl. ¶ 23.

10. Unfortunately, however, confusion has arisen over the meaning of the phrase in section 7631(f) "explicitly opposing prostitution." AOSI understands the plain meaning of the phrase to require opposition to the harms that prostitution inflicts on persons directly involved in the practice, and on others. Such a reading of the statutory phrase is consistent with the only legislative history discussing the scope of the provision, a statement by Senate Majority Leader Bill Frist. 149 Cong. Rec. S6457 (daily ed. May 15, 2003) (statement of Sen. Frist).

11. AOSI does not believe the statutory requirement should be interpreted to compel it to adopt the government's current view that criminalization and condemnation is the only proper approach to sex workers anywhere in the world. Moreover, AOSI and OSI assume that no policy that AOSI adopts in response to the Congressional requirement would impose legal constraints on the ability of OSI, which is a separately incorporated, distinct legal entity, to use its private funds to engage in policy debates concerning how the legal treatment of sex workers may impede HIV prevention efforts, to promote community organizing among sex workers, or to work with sex workers in a non-judgmental fashion.

12. Unfortunately, the imprecision of the Congressional language, the broad readings asserted by certain members of Congress, and warnings emanating from USAID officials, have created widespread uncertainty within the USAID grantee community concerning the scope and meaning of the required certification that a grantee has adopted a policy "explicitly opposing prostitution." Kushen Decl. ¶¶ 32-36; *see also* Declaration of Maurice Middleberg dated August 12, 2005, ¶ 21.

13. Since conduct inconsistent with the certification risks: (a) immediate, unilateral termination of the humanitarian project; (b) liability for the return of government funds; and (c) the risk of serious civil and criminal sanctions for having accepted government funds under false pretenses, it is necessary to clarify the substantive meaning of the required pledge in order to remove an ongoing chill from the ability of USAID grantees to use their private funds to discuss issues including changes in the legal treatment of sex workers and other techniques for shielding sex workers from abuse from both governmental and private sources.

14. USAID has issued no regulation explaining what would constitute a "policy" sufficient to comply with the pledge requirement. USAID has also made clear that it intends to scrutinize the activities in which recipients engage with their private funding to ensure that they are sufficiently "opposed" to prostitution. See DKT International v. USAID, Civ. Action No. 05-01604, Brief of Defendants USAID and Andrew Natsios (D.D.C. brief filed Aug. 26, 2005), at 22, attached to Diller Decl. as Ex. 14. However, USAID has not specified the full range of privately funded activities that, in its view, would constitute a violation of a recipient's pledge.

15. A USAID official, while noting that he was not authorized to give official guidance, has warned AOSI that the pledge requirement may well be construed by USAID to prohibit a recipient from advocating for changes in the legal status of sex work, from urging a substantial reduction in the penalties for sex work, and/or from helping to organize sex workers. Kushen Decl. ¶¶ 31-36.

16. On June 13, 2005, AOSI wrote to USAID, informing USAID of the policy described *supra* at paragraph 9, pointing out the ambiguity in the Congressional language

in section 7631(f), and seeking assurances that AOSI could execute the certification based on its policy opposing the harms of sex work. AOSI also sought assurances that it could do so without binding its and OSI's privately funded speech. Neier Decl. ¶ 46, Ex. C.

17. More than six weeks later, on August 3, 2005, USAID responded, but explicitly declined to provide guidance on the meaning of the certification required under section 7631(f), noting merely that AOSI activities would be subject to audit to assure compliance with the certification. Neier Decl. ¶¶ 50-51, Ex. D.

18. In August, 2005, after being subjected to harmful delays in the payment of scheduled USAID funding of AOSI's Drug Demand Reduction Program in Central Asia as a result of its letter to USAID seeking clarification of the meaning of the pledge requirement, it became clear that the AOSI program in Central Asia would cease in the absence of assurances that USAID funding would continue on schedule. However, USAID required AOSI to "certify" that it was in compliance with the pledge requirement in order for AOSI to receive expected funding. Accordingly, in order to permit the continuation of the programs, AOSI agreed to certify that it had adopted a policy opposing prostitution and sex trafficking in the form set forth in paragraph 9, but reserved its rights "to challenge the pledge requirement as violative of the First Amendment and other law." Kushen Decl. ¶¶ 45-46. USAID accepted the certification, and has released funds for the Central Asia drug demand reduction program on schedule. The program is currently operating successfully.

19. Unfortunately, the possibility that USAID officials will read the Congressional language as precluding the use of a grantees' private funds to discuss ways

6

of changing the legal treatment of sex workers so as to limit the spread of HIV/AIDS; to promote community organizing among sex workers; or to work with, or talk about, sex workers in a non-judgmental fashion, has confronted AOSI with a Hobson's choice: Either AOSI and OSI can self-censor and avoid privately funded discussion of less pejorative ways of dealing with sex workers; or they can use private funds to discuss the issues, placing themselves at risk of termination of the Central Asia drug demand reduction program, and even criminal and civil prosecution.

20. Self-censorship is not a viable option. USAID's application of its overbroad reading of the pledge requirement to AOSI's privately funded speech would directly undermine AOSI's work for a variety of reasons. Public health officials agree that it is essential to limit the spread of HIV among high-risk populations, such as sex workers, in order to deter the epidemic from spreading to the rest of the population. But, in order to work effectively with the high-risk populations such as sex workers, it is necessary to adopt non-pejorative approaches to them designed to alleviate the harms that afflict sex workers on a daily basis. For example, public health experts report that efforts recognized as successful at fighting the spread of HIV/AIDS involve assisting sex workers in forming self-help organizations, and working cooperatively with sex workers and relevant organizations to develop and implement life-saving HIV prevention strategies. In some regions, it is necessary to advocate for a change in the legal treatment of sex work, because when sex workers are threatened with fines, incarceration or other violence, they go underground, avoiding doctors, outreach workers, and others who want to provide them with the education, condoms, and other tools they need to avoid becoming infected and infecting others.   Declaration of Chris Beyrer, dated Sept. 21, 2005, ¶ 2.

21. The plaintiffs are joined in their ethical and constitutional concerns by many other recipients of USAID funding. The government of Brazil, and a number of highly respected US and foreign non-governmental organizations, have declined to participate in the USAID Global AIDS program since implementation of the overbroad reading of the pledge requirement. Declaration of Pedro Chequer dated Aug. 24, 2005, ¶¶ 3, 5-8 (explaining that Brazil was forced to turn down this money because its highly successful anti-HIV effort, which has reduced the rate of HIV in the country, is premised on working in partnership with sex workers to persuade Brazilians to give up dangerous sexual behaviors); Decl. of Lawrence Holtzman, attached as Ex. 11 to Diller Decl. (explaining that DKT International, a US non-profit that uses social marketing techniques to distribute condoms in Vietnam and elsewhere, has refused to sign the pledge requirement because of concerns that the requirement will impede its efforts to fight the HIV/AIDS epidemic, and instead has sued to enjoin its enforcement); Decl. of Rosanna Barbero.

22. Many other eminent US and foreign non-governmental organizations that have continued to receive USAID funding have documented ways in which an overbroad reading of the pledge requirement interferes with their ability to fight HIV/AIDS. See Declaration of Ruth Messinger, dated Aug. 16, 2005, 8, 11-15 (documenting concerns of American Jewish World Service); Decl. of Maurice I. Middleberg, dated Aug. 12, 2005, 16 (concerns of EngenderHealth); Letter from Peter Bell et al. to Hon. Randall Tobias, dated Feb. 25, 2005 (attached as Ex. D to Middleberg Decl.) (listing concerns of CARE, International Rescue Committee, Save the Children, and 10 other major humanitarian organizations based in the US).

23. USAID's overbroad reading of the term "opposing prostitution" to ban the use of private funds to discuss changes in the legal treatment of sex workers, to promote community organizing among sex workers, and to engage in other, non-pejorative approaches to sex workers as techniques to limit the spread of HIV/AIDS is unlawful for three reasons: (1) the statute's text will not bear such an overbroad reading, *see* Mem. of Law in Supp. of Pls.' Mot. For Prelim. Inj. at 16-21; (2) USAID's reading of the statute renders it violative of the First Amendment "void for vagueness" doctrine, *see id.* at 21-26; and (3) the United States may not force grantees to adopt the government's viewpoint on the pejorative treatment of sex workers as a condition of participating in the Global AIDS prevention program, and may not condition the grant of public funds on a promise to refrain from using private funds for First Amendment activities, *see id.* at 27-34.

24. Accordingly, Plaintiffs respectfully seek preliminary injunctive relief:

(1) barring defendants United States Agency for International Development ("USAID") and Andrew Natsios, Administrator of USAID, from discontinuing and/or delaying the funding of plaintiff AOSI pending a final ruling on the merits;

(2) barring USAID from unilaterally terminating its Cooperative Agreement with AOSI or the Modifications of Assistance thereto, seeking a refund of moneys disbursed under the cooperative agreement, debarring AOSI, or otherwise taking action against AOSI, solely on the grounds that AOSI or OSI has used their private funding to engage in any privately funded actions protected by the First Amendment, including but not limited to:

(a) sponsoring or participating in a conference in New York this October entitled, "Sex Work, Sexual Rights and Countering the Conservative Sexual Agenda,"

(b) publicizing "Sex Work, HIV/AIDS, and Human Rights in Central and Eastern Europe and Central Asia," published by the Central and Eastern European Harm Reduction Network,

(c) operating a listserv that provides a forum for participants to share information, opinions, and resources related to the health, safety and

9

well-being of sex workers in Eastern Europe and the former Soviet Union, or

(d) providing funding and technical assistance to non-profit organizations working with sex workers to fight the spread of HIV/AIDS, including organizations that advocate for the most effective policies, including – where appropriate – changes in the legal treatment of sex workers in order to facilitate outreach to them and ensure their access to needed health care and social services.

(3) granting such other and further relief as the Court shall deem proper.

25. Plaintiffs also seek entry of a declaratory judgment that the pledge requirement contained in 22 U.S.C. § 7631(f) requires only that U.S.-based non-profits receiving Global AIDS Act funding state that sex work causes harm to the women involved, does not in any way restrict the activities in which those non-profits may engage with their non-government funding, and does not impede the activities of plaintiff OSI in any way. In the alternative, the plaintiffs seek entry of a declaratory judgment that USAID's application of the pledge requirement to the plaintiffs and other non-profit organizations based in the United States is unconstitutional.

I declare under penalty of perjury that the foregoing is true and correct.

September 22, 2005
New York, New York

_____
BURT NEUBORNE