DILLER
DECLARATION

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
ALLIANCE FOR OPEN SOCIETY
INTERNATIONAL, INC. and OPEN SOCIETY
INSTITUTE,

                              Plaintiffs,

                                                    DECLARATION OF
                                                    REBEKAH DILLER

        -against-


UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT, *et al.*

                              Defendants.
----------------------------------------------------------------


        I, REBEKAH DILLER, hereby declare as follows:

        1.     I am an associate counsel at the Brennan Center for Justice at NYU School

of Law, which represents the plaintiffs in the above-captioned case.  I am admitted to

practice before the bar of the State of New York and the United States District Courts for

the Southern District of New York and the Eastern District of New York.

        2.     Plaintiffs submit this declaration to enter exhibits into evidence in support

of the plaintiffs' motion for a preliminary injunction.

### DESCRIPTION OF EXHIBITS

        3.  Attached as Exhibit 1 is a copy of 22 U.S.C.A. § 7631, part of the United

States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 ("the

Global AIDS Act"), 22 U.S.C. § 7601 *et seq.* Section 7631(f) contains the restriction at

issue in this case, "the pledge requirement."

4.   Attached as Exhibit 2 is a United States Agency for International Development ("USAID") directive entitled "Acquisition & Assistance Policy Directive 04-04 (Revised)" issued February 26, 2004.

5.   Attached as Exhibit 3 is a USAID directive entitled "Acquisition & Assistance Policy Directive 05-04" issued June 9, 2005.

6.   Attached as Exhibit 4 are relevant pages from a USAID document entitled "Guidance on the Definition and Use of the Child Survival and Health Programs Fund and the Global HIV/AIDS Initiative Account" posted by USAID on a website it maintains and that I printed out on August 2, 2005 from the following URL: http://www.usaid.gov/policy/ads/200/200mab.pdf (full document available on request).

7.   Attached as Exhibit 5 are relevant pages from USAID's "Response to Congressional Inquiries Regarding Health Activities in Central Asia: Briefing Book" dated February 16, 2005 (full document available on request).

8.   Attached as Exhibit 6 are relevant pages from a document authored by the Office of the United States Global AIDS Coordinator entitled "Emergency Plan for AIDS Relief: Fiscal Year 2005 Operation Plan" posted by the State Department on a website it maintains and that I printed out on September 16, 2005 from the following URL: http://www.state.gov/documents/organization/44619.pdf (full document available on request).

9.   Attached as Exhibit 7 is a letter from Daniel Levin, Acting Assistant Attorney General, U.S. Department of Justice, to Alex M. Azar, II, General Counsel, U.S. Department of Health and Human Services, dated September 20, 2004.

10. Attached as Exhibit 8 is a letter from U.S. Representatives Tom Davis and Mark Souder to Andrew Natsios, Administrator, USAID, dated February 11, 2005.

11. Attached as Exhibit 9 is a letter from U.S. Senator Tom Coburn to President George W. Bush dated May 19, 2005.

12. Attached as Exhibit 10 is a letter from U.S. Representative Mark Souder, *et al.*, to Andrew Natsios, Administrator, USAID, dated July 15, 2005.

13. Attached as Exhibit 11 is the Declaration of Lawrence C. Holzman dated Aug. 8, 2005, submitted to the United States District Court for the District of Columbia in *DKT International, Inc. v United States Agency for International Development*, Civ. Action No. 05-01604 (D.D.C. declaration filed Aug. 11, 2005).

14. Attached as Exhibit 12, for the Court's convenience, are relevant pages of a true and exact copy of a brief submitted by Defendants in opposition to an application for a preliminary injunction to the United States District Court for the District of Columbia in *DKT International, Inc. v. United States Agency for International Development*, Civ. Action No. 05-01604 (D.D.C. brief filed Aug. 26, 2005) (full document available on request).

15. Attached as Exhibit 13 is a true and exact copy of an article by Michael Phillips published in the February 28, 2005 edition of *The Wall Street Journal* entitled "Bush Ties Money for AIDS Work to a Policy Pledge."

16. Attached as Exhibit 14 is a true and exact copy of an article by Michael Phillips and Matt Moffett published in the May 2, 2005 edition of *The Wall Street Journal* entitled "Brazil Refuses U.S. AIDS Funds Due to Antiprostitution Pledge."

3

17. Attached as Exhibit 15 is a true and exact copy of an article published in the August 20, 2005 edition of *The Economist* entitled "Prostitution v. Constitution: A Challenge to America's Anti-AIDS Policy."

18. Attached as Exhibit 16 is a true and exact copy of an opinion-editorial by Helene Cooper published in the August 26, 2005 edition of *New York Times* and entitled "What? Condoms Can Prevent AIDS? No way!"

19. Attached as Exhibit 17 are relevant pages from USAID document entitled "USAID's Expanded Response to HIV/AIDS" dated June 2002 and posted by USAID on a website it maintains and that I printed out on September 21, 2005 from the following URL: http://www.state.gov/documents/organization/44619.pdf (full document available on request).

20. Attached as Exhibit 18 are relevant pages from a USAID document entitled "Leading the Way: USAID Responds to HIV/AIDS 1997-200" dated September 2001 and posted by USAID on a website it maintains and that I printed out on September 21, 2005 from the following URL: http://pdf.dec.org/pdf_docs/PNACM861.pdf (full document available on request).

I declare under penalty of perjury that the foregoing is true and correct.

September 22, 2005
New York, New York

REBEKAH DILLER

4

Exhibit 1

**FOR EDUCATIONAL USE ONLY**
22 U.S.C.A. § 7631

United States Code Annotated Currentness
  Title 22. Foreign Relations and Intercourse
    Chapter 83. United States Leadership Against Hiv/Aids, Tuberculosis, and Malaria (Refs & Annos)
      ▪▣ Subchapter III. Bilateral Efforts
        ▪▣ Part A. General Assistance and Programs
          ➡ **§ 7631. Assistance to combat HIV/AIDS**

(a) Omitted

(b) Authorization of appropriations

  (1) In general

  In addition to funds available under section 104(c) of the Foreign Assistance Act of 1961 (22 U.S.C. 2151b(c)) for such purpose or under any other provision of that Act, there are authorized to be appropriated to the President, from amounts authorized to be appropriated under section 7671 of this title, such sums as may be necessary for each of the fiscal years 2004 through 2008 to carry out section 104A of the Foreign Assistance Act of 1961 [22 U.S.C.A. § 2151b-2].

  (2) Availability of funds

  Amounts appropriated pursuant to paragraph (1) are authorized to remain available until expended.

  (3) Allocation of funds

  Of the amount authorized to be appropriated by paragraph (1) for the fiscal years 2004 through 2008, such sums as may be necessary are authorized to be appropriated to carry out section 104A (d)(4) of the Foreign Assistance Act of 1961 [22 § 2151b-2(d)(4)], relating to the procurement and distribution of HIV/AIDS pharmaceuticals.

(c) Relationship to assistance programs to enhance nutrition

In recognition of the fact that malnutrition may hasten the progression of HIV to AIDS and may exacerbate the decline among AIDS patients leading to a shorter life span, the Administrator of the United States Agency for International Development shall, as appropriate--

  **(1)** integrate nutrition programs with HIV/AIDS activities, generally;
  **(2)** provide, as a component of an anti-retroviral therapy program, support for food and nutrition to individuals infected with and affected by HIV/AIDS; and
  **(3)** provide support for food and nutrition for children affected by HIV/AIDS and to communities and households caring for children affected by HIV/AIDS.

(d) Eligibility for assistance

An organization that is otherwise eligible to receive assistance under section 104A of the Foreign Assistance Act of 1961 [22 U.S.C.A. § 2151b-2] or under any other provision of this Act (or any amendment made by this Act) to prevent, treat, or monitor HIV/AIDS shall not be required, as a condition of receiving the assistance, to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

(e) Limitation

No funds made available to carry out this Act, or any amendment made by this Act, may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(f) Limitation

No funds made available to carry out this Act, or any amendment made by this Act, may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking, except that this subsection shall not apply to the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative or to any United Nations agency.

(g) Sense of Congress relating to food assistance for individuals living with HIV/AIDS

(1) Findings

Congress finds the following:
**(A)** The United States provides more than 60 percent of all food assistance worldwide.
**(B)** According to the United Nations World Food Program and other United Nations agencies, food insecurity of individuals infected or living with HIV/AIDS is a major problem in countries with large populations of such individuals, particularly in African countries.
**(C)** Although the United States is willing to provide food assistance to these countries in need, a few of the countries object to part or all of the assistance because of fears of benign genetic modifications to the foods.
**(D)** Healthy and nutritious foods for individuals infected or living with HIV/AIDS are an important complement to HIV/AIDS medicines for such individuals.
**(E)** Individuals infected with HIV have higher nutritional requirements than individuals who are not infected with HIV, particularly with respect to the need for protein. Also, there is evidence to suggest that the full benefit of therapy to treat HIV/AIDS may not be achieved in individuals who are malnourished, particularly in pregnant and lactating women.

(2) Sense of Congress

It is therefore the sense of Congress that United States food assistance should be accepted by countries with large populations of individuals infected or living with HIV/AIDS, particularly African countries, in order to help feed such individuals.

CREDIT(S)

(Pub.L. 108-25, Title III, § 301, May 27, 2003, 117 Stat. 728; Pub.L. 108-199, Div. D, Title V, § 595 (3), Jan. 23, 2004, 118 Stat. 209.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

2003 Acts. House Report No. 108-60 and Statement by President, see 2003 U.S. Code Cong. and Adm. News, p. 712.

2004 Acts. House Conference Report No. 108-401, see 2004 U.S. Code Cong. and Adm. News, p. 3.

Statement by President, see 2004 U.S. Code Cong. and Adm. News, p. S3.

References in Text

The Foreign Assistance Act of 1961, referred to in subsecs. (b)(1), (b)(3), (d), is Pub.L. 87-195, Sept. 4, 1961, 75 Stat. 424, as amended, which is classified principally to chapter 32 of this title, 22 U.S.C.A. § 2151 et seq. For complete classification, see Short Title note set out under 22 U.S.C.A. § 2151 and Tables.

This Act, referred to in subsecs. (d), (e), is the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003, Pub.L. 108-25, May 27, 2003, 117 Stat. 711, which enacted this chapter, 22 U.S.C.A. § 262p-8 and §§ 2151b-2 to 2151b-4, and amended 22 U.S.C.A. §§ 2222, 2651a, 2151b and 42 U.S.C.A. § 242l. For complete classification, see short title note set out under 22 U.S.C.A. § 7601 and Tables.

Codifications

Subsec. (a) of this section amended 22 U.S.C.A. § 2151b(c) and enacted 22 U.S.C.A. § 2151b-2.

Amendments

2004 Amendments. Subsec. (f). Pub.L. 108-199, § 595(3), inserted ", except that this subsection shall not apply to the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative or to any United Nations agency" after "trafficking".


LIBRARY REFERENCES

American Digest System

    United States ⇐82(1).
    Key Number System Topic No. 393.

22 U.S.C.A. § 7631, 22 USCA § 7631


Current through P.L. 109-39, approved 07-27-05

Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2

 # Acquisition & Assistance Policy Directive
## *(AAPD)*

**From the Director, Office of Procurement**     Issued: February 26, 2004

# AAPD 04-04 (Revised)

### Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Prostitution and Sex Trafficking

| | |
|---|---|
| **Subject Category:** | **Assistance, Contracts** |
| **Type:** | **Policy** |

---

AAPDs provide information of significance to all agency personnel and partners involved in the Acquisition and Assistance process. Information includes (but is not limited to): advance notification of changes in acquisition or assistance regulations; reminders; procedures; and general information. Also, AAPDs may be used to implement new requirements on short-notice, pending formal amendment of acquisition or assistance regulations.

AAPDs are **EFFECTIVE AS OF THE ISSUED DATE** unless otherwise noted in the guidance below; the directives remain in effect until this office issues a notice of cancellation.

---

**This AAPD:**      ____Is New      ___Replaces/_X_ _Amends
CIB/AAPD No: __04-04__

**Precedes change to:**      _X_ _AIDAR Part(s) _752_ ____ Appendix ____

     _X_ USAID Automated Directives System (ADS) Chapters 303

     ___Code of Federal Regulations _____

     ____ Other_____

     ____ No change to regulations

**Applicable to:**      ___Existing awards;  Modification required:

         ___Effective immediately

         ___No later than _____

         ___As noted in guidance below

     _X_ RFAs issued on or after the effective date of this AAPD; all other Pending Awards, i.e., 8(a), sole source…

     _X_ Other or N/A _All new awards or modifications to existing awards obligating funds for HIV/AIDS activities_____

**New Provision/Clause Provided Herein:**      _X_ Yes;  Scheduled update to Prodoc: ____June 2004_____

     _____ No

_____
*(Signature on file)*
TIMOTHY T. BEANS

## 1. PURPOSE:

The purpose of the AAPD is to provide clauses to be included as new standard provisions for assistance agreements and contracts that include FY 2004 HIV/AIDS funds. These provisions: (i) permit recipients to not endorse or utilize a multisectoral approach to combating HIV/AIDS, or to not endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection; (ii) prohibit the funds provided under the agreement to be used to promote the legalization or practice of prostitution or sex trafficking; and (iii) require certain recipients to agree that they oppose prostitution and sex trafficking.

## 2. BACKGROUND:

The United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003, Pub.L. No. 108-25 (2003) (the "AIDS Authorization") authorizes funds to be appropriated for HIV/AIDS activities for the fiscal years 2004-2008. The AIDS Authorization includes, among other things, certain restrictions on the use of HIV/AIDS funds, and requires certain recipients of those funds to have certain policies in place. It also permits an organization to receive funds even if such organization cannot endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

Specifically, Section 301, entitled "Assistance to Combat HIV/AIDS," includes the following provisions:

"(d) ELIGIBILITY FOR ASSISTANCE- An organization that is otherwise eligible to receive assistance under section 104A of the Foreign Assistance Act of 1961 (as added by subsection (a)) or under any other provision of this Act (or any amendment made by this Act) to prevent, treat, or monitor HIV/AIDS shall not be required, as a condition of receiving the assistance, to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

(e) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and when proven effective, microbicides.

(f) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking."

In response to a question from Senator Leahy on the Senate floor regarding provision (f) above, Senator Frist stated that "a statement in the contract or grant agreement between the U.S. Government and such organization that the organization is opposed

AAPD 04-                                    2

to the practices of prostitution and sex trafficking because of the psychological and physical risks they pose for women . . . would satisfy the intent of the provision." 149 Cong. Rec. S6457 (daily ed. May 15, 2003) (statement of Sen. Frist)

The Consolidated Appropriations Act of 2004, Division D – Foreign Operations, Export Financing, and Related Programs Appropriations ("FY 04 Appropriations Act"), Title II – Bilateral Economic Assistance, United States Agency for International Development, Child Survival and Health Programs Fund includes the following provision, "That information provided about the use of condoms as part of projects or activities that are funded from amounts appropriated by this Act shall be medically accurate and shall include the public health benefits and failure rates of such use."

In a colloquy on the Senate floor regarding the application of section 301(d) of the AIDS Authorization (see above), Senator Frist noted as follows: "I fully agree that it is essential that information about approaches to HIV/AIDS prevention be medically accurate, including both the public health benefits and failure rates of the approach involved. That is what is intended by this provision. In fact, the provision uses the words "an organization that is otherwise eligible to receive assistance". I believe that "otherwise eligible" should be interpreted to require explicit assurances by such organizations that when it provides information about HIV/AIDS prevention approaches it will meet this standard of accuracy."

In addition, the FY 04 Appropriations Act amends section 301(f) of the AIDS Authorization by exempting the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any "United Nations agency" from that section. The Statement of Managers states that the conferees "intend that for purposes of this provision, the World Health Organization includes its six regional offices: The Americas (PAHO); South-East Asia (SEARO); Africa (AFRO); Eastern Mediterranean (EMRO); Europe (EURO); and Western Pacific (WPRO)."

OMB has approved the Agency's information collection request under the Paperwork Reduction Act, allowing USAID to require (i) non-U.S. nongovernmental organizations, certain public international organizations and contractors or subcontractors that are foreign organizations to have a policy explicitly opposing, in their activities outside of the United States, prostitution and sex trafficking and (ii) U.S. and non-U.S. non-governmental organizations receiving FY04 HIV/AIDS funds under a grant or cooperative agreement to provide a certification that they are in compliance with the standard provisions "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" that appear below. (OMB No.: 0412-0568)

3. **GUIDANCE:**

For Assistance Agreements and PIO Grants:

I. Eligibility

The following provisions must be included in each new Request for Assistance and Annual Program Statement utilizing FY04 HIV/AIDS funding. When designing a program for HIV/AIDS the SO Team must be mindful of the first clause below. The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

These provisions also must be included in the Standard Provisions of any new grant or cooperative agreement to a public international organization or a U.S. or non-U.S. non-governmental organization financed with FY04 HIV/AIDS funds or modification to an existing grant or cooperative agreement that adds FY04 HIV/AIDS.

> "ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (FEB. 2004)
>
> An organization that is otherwise eligible to receive funds under this agreement to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.
>
> CONDOMS (FEB. 2004)
>
> Information provided about the use of condoms as part of projects or activities that are funded under this agreement shall be medically accurate and shall include the public health benefits and failure rates of such use."

II. Limitation on the Use of Funds

a.  Assistance Agreements with U.S. Non-Governmental Organizations and grants to the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any United Nations agency

The following must be included in the Standard Provisions of any grant or cooperative agreement or subagreement funded with FY04 HIV/AIDS funds with a U.S. nongovernmental organization or to the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any United Nations agency.  The World Health Organization includes its six regional offices:  The Americas (PAHO), South-East Asia (SEARO), Africa (AFRO); Eastern Mediterranean (EMRO), Europe (EURO), and Western Pacific (WPRO).

> "PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (FEB. 2004)

The U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons. None of the funds made available under this agreement may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act. 22 U.S.C. 7102(9).

The recipient shall insert this provision, which is a standard provision, in all subagreements under this award.

This provision includes express terms and conditions of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by USAID prior to the end of its term."

b.  Assistance Agreements with Non-U.S. Non-Governmental Organizations and Public International Organizations OTHER THAN the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative or any United Nations agency

The following must be included in the Standard Provisions of any grant or cooperative agreement or subagreement funded with FY04 HIV/AIDS funds with a non-U.S. non-governmental organization or with a public international organization other than the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative or any United Nations agency. For purposes of this provision, a non-U.S. non-governmental organization means an entity that is not organized under the laws of any State of the United States, the District of Columbia or the Commonwealth of Puerto Rico. Restoration of The Mexico City Policy, 66 Fed. Reg. 17303 (March 28, 2001).

"PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (FEB. 2004)

The U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons. None of the funds made available under this agreement may be used to promote or advocate the legalization or practice of prostitution or

sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

As a condition of entering into this agreement, the recipient agrees that it has a policy explicitly opposing, in its activities outside of the United States, prostitution and sex trafficking.

The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act. 22 U.S.C. 7102(9).

The recipient shall insert this provision, which is a standard provision, in all subagreements under this award.

This provision includes express terms and conditions of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by USAID prior to the end of its term."

III. Certification

Before a U.S. or non-U.S. non-governmental organization receives FY04 HIV/AIDS funds under a grant or cooperative agreement, such recipient must provide to the Agreements Officer a certification substantially as follows:

"[Recipient's name] certifies compliance as applicable with the standard provisions, "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" included in the referenced agreement."

For Contracts:

I. Eligibility

The following provisions must be included in each new solicitation and contract utilizing FY04 HIV/AIDS funding. When designing a program for HIV/AIDS the SO Team must be mindful of the first clause below. The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

In addition, these provisions are to be included when any existing contract is amended to add FY04 HIV/AIDS funding.

ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (FEB. 2004)

An organization that is otherwise eligible to receive funds under this agreement to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

CONDOMS (FEB. 2004)

Information provided about the use of condoms as part of projects or activities that are funded under this agreement shall be medically accurate and shall include the public health benefits and failure rates of such use.

II. Limitation on the Use of Funds

The following must be included in the Standard Provisions in any contract that includes FY04 HIV/AIDS funds.

PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (FEB. 2004)

This contract is authorized under the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 (P.L. 108-25).  This Act enunciates that the U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons.  The contractor shall not use any of the funds made available under this agreement to promote or advocate the legalization or practice of prostitution or sex trafficking.  Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

If the contractor or a subcontractor at any tier is a foreign organization, as a condition of entering into this contract or subcontract, the contractor/subcontractor must have a policy explicitly opposing, in its activities outside of the United States, prostitution and sex trafficking.

The following definitions apply for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.  22 U.S.C. 7102(9).

Foreign organization means an entity that is not organized under the laws of any State of the United States, the District of Colombia or the Commonwealth of Puerto Rico.

The contractor shall insert this clause in all subcontracts.

Any violation of this clause will result in the immediate termination of this contract by USAID."

## 4.  <u>POINT OF CONTACT</u>:

Please direct any questions to Allen Eisenberg, M/OP/P, Phone:  (202) 712-1467, e-mail:  aeisenberg@usaid.gov.

Exhibit 3



# Acquisition & Assistance Policy Directive (AAPD)

**From the Director, Office of Acquisition & Assistance     Issued: June 9, 2005**

## AAPD 05-04

## Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 — Eligibility Limitation on the Use of Funds and Opposition to Prostitution and Sex Trafficking

Subject Category:     ACQUISITION MANAGEMENT, ASSISTANCE

Type:     POLICY

---

AAPDs provide information of significance to all agency personnel and partners involved in the Acquisition and Assistance process. Information includes (but is not limited to): advance notification of changes in acquisition or assistance regulations; reminders; procedures; and general information. Also, AAPDs may be used to implement new requirements on short-notice, pending formal amendment of acquisition or assistance regulations.

AAPDs are EFFECTIVE AS OF THE ISSUED DATE unless otherwise noted in the guidance below; the directives remain in effect until this office issues a notice of cancellation.

---

This AAPD: ☐ Is New  ☒ Replaces/ ☐ Amends CIB/AAPD No: 04-04 (Revision 2)

| Applicable to: | Precedes change to: |
|---|---|
| ☒ Existing awards; ☐ Modification required | ☒ AIDAR Part(s) tbd  Appendix |
| ☐ No later than | ☒ USAID Automated Directives System (ADS) Chapter 302, 303, and 308 |
| ☒ As noted in guidance below | ☒ Code of Federal Regulations 22 CFR 226 |
| ☒ RFPs/RFAs issued on or after the effective date of this AAPD; all other Pending Awards, i.e., 8(a), sole source, IQC | ☐ Other |
| ☐ Other or N/A | ☐ No change to regulations |

☒ New Provision/Clause Provided Herein: If checked, scheduled update to Prodoc: Dec. 2005

---

*(signed copy on file)*
Jeffery Bell
Acting Director

## 1. <u>PURPOSE</u>:

The purpose of this AAPD is to provide clauses to be included as new standard provisions for assistance agreements and contracts that include HIV/AIDS funds. These provisions: (i) permit recipients to not endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to not endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection; (ii) prohibit the funds provided under the agreement to be used to promote the legalization or practice of prostitution or sex trafficking; and (iii) require recipients to agree that they oppose prostitution and sex trafficking.

## 2. <u>BACKGROUND</u>:

The United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003, Pub.L. No. 108-25 (2003) (the "AIDS Authorization") authorizes funds to be appropriated for HIV/AIDS activities for the fiscal years 2004-2008. The AIDS Authorization includes, among other things, certain restrictions on the use of HIV/AIDS funds, and requires recipients of those funds to have certain policies in place. It also permits an organization to receive funds even if such organization cannot endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

Section 301 of the AIDS Authorization, entitled "Assistance to Combat HIV/AIDS," includes the following provisions:

"(d) ELIGIBILITY FOR ASSISTANCE- An organization that is otherwise eligible to receive assistance under section 104A of the Foreign Assistance Act of 1961 (as added by subsection (a)) or under any other provision of this Act (or any amendment made by this Act) to prevent, treat, or monitor HIV/AIDS shall not be required, as a condition of receiving the assistance, to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

(e) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and when proven effective, microbicides.

(f) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking."

AAPD 05-04 Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

The Consolidated Appropriations Act of 2004 and 2005, Division D – Foreign Operations, Export Financing, and Related Programs Appropriations ("FY 04 and FY 05 Appropriations Acts"), Title II – Bilateral Economic Assistance, United States Agency for International Development, Child Survival and Health Programs Fund include the following provision, "That information provided about the use of condoms as part of projects or activities that are funded from amounts appropriated by this Act shall be medically accurate and shall include the public health benefits and failure rates of such use."

In addition, the FY 04 Appropriations Act amended section 301(f) of the AIDS Authorization by exempting the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any "United Nations agency" from that section. The Statement of Managers of the FY 04 Appropriations Act states that the conferees "intend that for purposes of this provision, the World Health Organization includes its six regional offices: The Americas (PAHO); South-East Asia (SEARO); Africa (AFRO); Eastern Mediterranean (EMRO); Europe (EURO); and Western Pacific (WPRO)."

Although the above-named public international organizations are exempt from section 301(f) of the AIDS Authorization, they are subject to the AAPD 05-04 clauses that implement sections 301(d) and (e) of the AIDS Authorization. However, this AAPD does not apply to USAID contributions to multidonor trust funds, such as to the Trust Fund for the Global Fund to Fight AIDS, Tuberculosis and Malaria.

Consistent with guidance from the U.S. Department of Justice, the AAPD 05-04 clauses that implement section 301(f) of the AIDS Authorization now apply to U.S. organizations as well as foreign organizations.

Prior to receiving HIV/AIDS funds under a grant or cooperative agreement, U.S. and non-U.S. non-governmental organizations that are prime recipients must provide a certification that they are in compliance with the standard provisions "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" that appear below. USAID intends to require prime contactors to provide a similar certification and is currently seeking the approval of the Federal Acquisition Regulation Council to do so. Pending such approval, USAID will not require contractors to provide a certification.

OMB has approved the Agency's information collection request under the Paperwork Reduction Act, allowing USAID to implement the above stated requirements in conformity with the Paperwork Reduction Act. Therefore, USAID will require (i) U.S. and non-U.S. nongovernmental organizations, certain public international organizations and contractors and subcontractors to have a policy explicitly opposing prostitution and sex trafficking; (ii) U.S. and non-U.S. non-governmental organizations receiving HIV/AIDS funds under a grant or cooperative agreement to provide a certification that they are in compliance with the standard provisions "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking"

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

3

that appear below; and (iii) all recipients of HIV/AIDS fund to ensure that information provided about the use of condoms as part of projects funded from such monies shall be medically accurate and include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID: HIV/STI Prevention and Condoms." (OMB No.: 0412-0568)

### 3. GUIDANCE:

<u>A. For Assistance Awards (grants and cooperative agreements) to U.S. non-governmental, non-U.S. non-governmental, and Public International Organizations (PIOs):</u>

I. Eligibility

The following provisions must be included in each new Request for Applications (RFA) and Annual Program Statement (APS) utilizing HIV/AIDS funding. When designing a program for HIV/AIDS the SO Team or requiring office must be mindful of the first clause below. The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

These provisions also must be included in the Standard Provisions of any new grant or cooperative agreement to a public international organization or a U.S. or non-U.S. non-governmental organization financed with FY04-FY08 HIV/AIDS funds or modification to an existing grant or cooperative agreement that adds FY04-FY08 HIV/AIDS funds.

> "ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (ASSISTANCE) (JUNE 2005)
>
> An organization that is otherwise eligible to receive funds under this agreement to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.
>
> CONDOMS (ASSISTANCE) (JUNE 2005)
> Information provided about the use of condoms as part of projects or activities that are funded under this agreement shall be medically accurate and shall include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID: HIV/STI Prevention and Condoms. This fact sheet may be accessed at:
> http://www.usaid.gov/our_work/global_health/aids/TechAreas/prevention/condomfactsheet.html"

AAPD 05-04 Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

4

II. Limitation on the Use of Funds

The following must be included in the Standard Provisions of any grant or cooperative agreement or subagreement funded with FY04-FY08 HIV/AIDS funds with a U.S. nongovernmental organization, non-U.S., non-governmental organization or public international organizations.

"PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ASSISTANCE) (JUNE 2005)

(a)  The U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons.  None of the funds made available under this agreement may be used to promote or advocate the legalization or practice of prostitution or sex trafficking.  Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(b)  Except as noted in the second sentence of this paragraph, as a condition of entering into this agreement or any subagreement, a non-governmental organization or public international organization recipient/subrecipient must have a policy explicitly opposing prostitution and sex trafficking.  The following organizations are exempt from this paragraph:  the Global Fund to Fight AIDS, Tuberculosis and Malaria; the World Health Organization; the International AIDS Vaccine Initiative; and any United Nations agency.

(c)  The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.  22 U.S.C. 7102(9).

(d)  The recipient shall insert this provision, which is a standard provision, in all subagreements.

(e)  This provision includes express terms and conditions of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by USAID prior to the end of its term.

(End of Provision)"

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

III. Certification

This certification requirement only applies to the prime recipient. Before a U.S. or non-U.S. non-governmental organization receives FY04-FY08 HIV/AIDS funds under a grant or cooperative agreement, such recipient must provide to the Agreement Officer a certification substantially as follows:

> "[Recipient's name] certifies compliance as applicable with the standard provisions entitled "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" included in the referenced agreement."

B.  For Contracts:

I. Eligibility

The following provisions must be included in each new solicitation and contract utilizing FY04-FY08 HIV/AIDS funding. When designing a program for HIV/AIDS the SO Team or requiring office must be mindful of the first clause below. The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

In addition, these provisions are to be included when any existing contract is amended to add FY04-FY08 HIV/AIDS funding.

> "ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (ACQUISITION) (JUNE 2005)
>
> An organization that is otherwise eligible to receive funds under this contract to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.
>
> CONDOMS (ACQUISITION) (JUNE 2005)
>
> Information provided about the use of condoms as part of projects or activities that are funded under this contract shall be medically accurate and shall include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID:  HIV/STI Prevention and Condoms. This fact sheet may be accessed at:
> http://www.usaid.gov/our_work/global_health/aids/TechAreas/prevention/condomfactsheet.html"

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

6

II. Limitation on the Use of Funds

The following must be included in the Schedule of any contract that includes FY04-FY08 HIV/AIDS funds.

"PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ACQUISITION) (JUNE 2005)

(a)  This contract is authorized under the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 (P.L. 108-25).  This Act enunciates that the U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons.  The contractor shall not use any of the funds made available under this contract to promote or advocate the legalization or practice of prostitution or sex trafficking.  Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(b)  Except as provided in the second sentence of this paragraph, as a condition of entering into this contract or subcontract, a non-governmental organization or public international organization contractor/subcontractor must have a policy explicitly opposing prostitution and sex trafficking.  The following organizations are exempt from this paragraph:  the Global Fund to Fight AIDS, Tuberculosis and Malaria; the World Health Organization; the International AIDS Vaccine Initiative; and any United Nations agency.

(c)  The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.  22 U.S.C. 7102(9).

(d)  The contractor shall insert this clause in all subcontracts.

(e)  Any violation of this clause will result in the immediate termination of this contract by USAID."

If the contract provides for the contractor to execute grants to non-governmental organizations (not-for-profits or for-profits), per ADS 302.5.6 Grants under Contracts, then the contractor must comply with the assistance provisions in Section 3.A of this AAPD when awarding grants or cooperative agreements under its contract (in compliance with ADS 302.5.6(c) and (d)).

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

7

4. <u>**POINTS OF CONTACT**</u>:

USAID Contracting Officers and Agreement Officers may direct their questions about this AAPD to Diane M. Howard, M/OAA/PE, Phone:  (202) 712-0206 e-mail: dhoward@usaid.gov, or Ann Cataldo, M/OAA/PE, Phone (202) 712-4886, e-mail acataldo@usaid.gov.

Contractors, recipients, and prospective offerors for contracts or assistance awards must direct their questions to the cognizant Contracting Officer or Agreement Officer for the award.

All other inquiries about this AAPD may be addressed to Diane Bui, GC/GH & EGAT, Phone (202) 712-0529 e-mail: dibui@usaid.gov.

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

8

Exhibit 4

07/22/2004 Revision
Editorial: Yes
Substantive: Yes

Mandatory Reference: 200
File Name:      200mab_072204_cd37
Revision:       07/22/2004

# GUIDANCE ON THE DEFINITION AND USE OF THE CHILD SURVIVAL AND HEALTH PROGRAMS FUND
## AND THE
## GLOBAL HIV/AIDS INITIATIVE ACCOUNT

## FY 2004 UPDATE



## JULY 22, 2004
## FINAL

USAID operating units which are implementing HIV/AIDS programs in high HIV prevalence countries[8] are strongly encouraged to adopt a multi-sectoral approach to evidence-based treatment, prevention, and care programs aimed at combating the HIV/AIDS pandemic and mitigating the negative impacts of HIV/AIDS on development. Additionally, the U.S. Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 directs USAID to support prevention, treatment, education, program monitoring, care and support of orphans, and public-private partnerships.

While CSH HIV/AIDS funds can be used for the HIV/AIDS-related components of broad sectoral or multi-sectoral programs, operating units must use other funds to support activities that do not have a direct and measurable impact on the prevention, care and treatment of HIV/AIDS. The use of CSH funds is always governed, first by the Congressional directives, followed by S/GAC policy guidance and the Agency's HIV/AIDS results framework. For a more complete description of the guidelines governing multi-sectoral HIV/AIDS activities, see Appendix III.

- **Prostitution and Sex Trafficking**: Section 301 of the AIDS Authorization entitled, "Assistance to Combat HIV/AIDS," includes certain restrictions on the use of HIV/AIDS funds relating to prostitution and sex trafficking.[9] Specifically, Section 301 of the AIDS Authorization entitled, "Assistance to Combat HIV/AIDS" prohibits HIV/AIDS funds to be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Section 301 also requires non-U.S. non-governmental organizations[10] and certain Public International Organizations[11] receiving HIV/AIDS funds to agree that they have a policy explicitly opposing, in their activities outside of the United States, prostitution and sex trafficking. Both U.S. and non-U.S. organizations that receive HIV/AIDS funds must certify before receiving such funds that they are in compliance with the applicable standard provisions included in Acquisition and Assistance Policy Directive 04-04. See Acquisition and Assistance Policy Directive (AAPD) 04-04:

---

[8] at least 5% of adults 15-49 years old infected

[9] Section 301 includes the following provisions:

(e) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and when proven effective, microbicides.

(f) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking."

[10] The Office of Legal Counsel, U.S. Department of Justice in a draft opinion determined that this provision only may be applied to foreign non-governmental organizations and public international organizations because of the constitutional implications of applying it to U.S. organizations.

[11] The FY 04 Appropriations Act amends Section 301(f) of the AIDS Authorization by exempting the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any "United Nations agency" from that section. The Statement of Managers states that the conferees "intend that for purposes of this provision, the World Health Organization includes its six regional offices: The Americas (PAHO); South-East Asia (SEARO); Africa (AFRO); Eastern Mediterranean (EMRO); Europe (EURO); and Western Pacific (WPRO)."

Exhibit 5



# USAID
## FROM THE AMERICAN PEOPLE

## RESPONSE TO CONGRESSIONAL INQUIRIES REGARDING HEALTH ACTIVITIES IN CENTRAL ASIA

## BRIEFING BOOK

### FEBRUARY 16, 2005

### TABLE OF CONTENTS

**Exhibit:**

1. World Health Organization's (WHO's) "Harm Reduction Approaches to Injecting Drug Use"

2. Allegations against the USG/USAID entitled "Harm Reduction Support by USG Agencies" See Appendix 1 of the Cover Memorandum for detailed responses to these charges.

3. Email from Katy French, February 8, 2005, "USAID, HIV 'prevention,' George Soros and harm reduction"

4. Excerpts from CSH Guidance for FY 2002

5. Excerpts from CSH Guidance for FY 2003

6. Excerpts from CSH Guidance for FY 2004

7. State Cable 267675 from Administrator Natsios, dated December 30 2002, "Implementation of USAID Policies and Programs on HIV/AIDS and Trafficking"

8. UNAIDS Best Practice Collection, "Drug use and HIV/AIDS," UNAIDS statement presented at the United Nations General Assembly Special Session on Drugs

9. Excerpt from the U.S. Centers for Disease Control and Prevention's HIV Prevention Strategic Plan Through 2005

-2-

10. "Principles of HIV Prevention in Drug-Using Populations," National Institute on Drug Abuse (NIDA)

11. Excerpts from the HIV Prevention Cooperative Agreement

12. Excerpts from the DDRP Cooperative Agreement

13. Mission Controller Opinion and Audit Findings

14. Excerpts from the Civic Education Grant Agreement

15. Description of Debate Club

16. List of Approximately 200 Debate Topics

17. Communication Regarding Compliance

18. Communication Regarding Compliance

19. Communication Regarding Compliance

20. CAPACITY RFA

21. ONDCP Circular: Policy Coordination, May 30, 2002

22. Appendix A of ONDCP Circular of the Budget Formation, April 18, 2003, List of National Drug Control Program Agencies

23. Email for USAID Office of General Counsel on ONDCP

24. Population Services International Website

25. 2001 PowerPoint presentation "Central Asia: Drug Trafficking and Early Targeted Intervention to Combat HIV/AIDS Epidemic"

26. New York Times editorial, September 24, 2004, "California's Bold Step on Drug Addiction"

27. Cable on NGO Activities in Uzbekistan

28. *Guidance To United States Government In-Country Staff and Implementing Partners Applying the ABC Approach To Preventing Sexually-Transmitted HIV Infections Within The President's Emergency Plan For AIDS Relief*, January 2005, Office of the Global AIDS Coordinator, State Department

# MEMORANDUM IN RESPONSE TO CONGRESSIONAL INQUIRIES REGARDING HEALTH ACTIVITIES IN CENTRAL ASIA

February 15, 2005

Prepared by the
United States Agency for International Development
Mission to the Central Asia Republics

## APPENDIX 1

### USAID/CAR RESPONSES TO "HARM REDUCTION SUPPORT BY USG AGENCIES"[27]

---

| | |
|---|---|
| **Tab 1:** | **Refers to USAID/ANE; not USAID/CAR.** |
| **Tab 2:** | **Refers to USAID support for 14th International Conference on Reduction of Drug Related Harm; not USAID/CAR funding.** |
| **Tab 3:** | **Refers to USAID contracts support for Central and Eastern Europe Harm Reduction News Digests; not USAID/CAR funding.** |
| **Tab 4:** | **"Tab 4 contains an announcement on the web site of Population Services International (PSI) of a five-year $4.3 million contract for a demand reduction program in Central Asia."** |

USAID/CAR's Drug Demand Reduction Program (DDRP, see Exhibit 13) represents an illustration of the programmatic shift away from interventions narrowly focused on drug users and their risk reduction. It uses a broader risk reduction approach, which complies with the shift in the USAID use of the term from "harm" to "risk" reduction. The emphasis is on reducing the initiation or demand for heroin or other opiates. The project aims to reduce drug use and its harms, as well as reduce the spread of HIV, since injecting drug use accounts for 70-90 percent of HIV infections in Central Asia. It is a five-year cooperative agreement (note: not a contract) for $16.5 million under which PSI is a sub-grantee. There may be instances, however, when the terms harm reduction and risk reduction are used interchangeably.

**First sub-bullet:**     **"In addition to PSI, the list of demand reduction consortium partners includes the Open Society Institute in New York and the Soros sister foundations in Kazakhstan, Uzbekistan, and Tajikistan."**

This is a correct statement, although an incomplete list of DDRP partners. DDRP is currently implemented by the Alliance for Open Society International (AOSI), with the following sub-grantees:

- Open Society Institute Assistance Foundation-Tajikistan
- Soros Foundation-Kyrgyzstan
- Eurasia Foundation Uzbekistan
- AIDS Foundation East-West ("AFEW")
- Population Services International ("PSI")
- Accord, an affiliate of Street Kids International
- Internews Uzbekistan, and
- InternewsTajikistan.

The Request for Applications ("RFA"), issued on July 15, 2002 and in full compliance with USAID procurement practices, led to the submission of applications from interested organizations. In compliance with USAID procurement practices, a technical evaluation committee reviewed applications and selected the one that best met the evaluation criteria

---

[27] The term "Tabs" in Appendix 1 refers to allegations against USAID in particular and the U.S. Government in general made in a document entitled "Harm Reduction Support by USG Agencies," as shown in Exhibit 2 of this memorandum. The term "Tabs" does not mean this memorandum's exhibits listed below.

Exhibit 6



**EMERGENCY PLAN FOR AIDS RELIEF**
**FISCAL YEAR 2005 OPERATIONAL PLAN**


**FEBRUARY 2005**

**TABLE OF CONTENTS**                                                        **PAGE**

I. Acronyms ...............................................................................................................…….........4

II. Introduction ...........................................................................................................................5
      Overview ...............................................................................................…….............6-12
      Table 1:  FY 2005 Emergency Plan Budget ..........................................................9
      Table 2:  Planned Allocations of $1.9 Billion................................................10
      Table 3:  Approved funding levels..................................................................11
      Table 4:  Distribution by Program Areas.............................................................12

III. Focus Country Activities ...........................................................................13-124
      Introduction ......................................................................................................14
      Table 5:  FY 2004 - 2005 Funding Levels for Focus Countries.............................15
      Table 6:  FY 2005 Budget for Focus Countries by Country and Agency......................16
      Table 7:  FY 2005 Budget for Focus Countries by Country and Source........................17
            Botswana .............................................................................18-24
            Cote d'Ivoire ......................................................................25-31
            Ethiopia .............................................................................32-40
            Guyana ...............................................................................41-47
            Haiti....................................................................................48-53
            Kenya..................................................................................54-62
            Mozambique.......................................................................63-69
            Namibia ..............................................................................70-75
            Nigeria ...............................................................................76-81
            Rwanda ..............................................................................82-89
            South Africa........................................................................90-96
            Tanzania.............................................................................97-103
            Uganda ..............................................................................104-111
            Vietnam .............................................................................112-117
            Zambia................................................................................118-124

IV. Other Bilateral Programs.........................................................................125
      Introduction ....................................................................................…...............126
      Table 8 ..............................................................................................126
      Program Descriptions ...................................................................…...............126

V. Central Programs...........................................................................127-146
      Introduction ....................................................................................................128
      Table 9:  FY 2005 Budget for Central Programs by Agency Implementing Activity.........129
      Central Programs Program Descriptions.......................................................130-146
            Abstinence/Faithfulness..................................................................130-131
            Antiretroviral Therapy....................................................................132-133
            Blood Transfusion Safety ...............................................................134-135
            Orphans and Vulnerable Children...................................................136-137
            Quality Assurance for Supply Chain Management..............................138-139
            Safe Medical Injections ..................................................................140-141
            Supply Chain Management................................................................142

2

## OVERVIEW

The FY 2005 Operational Plan follows "The President's Emergency Plan for AIDS Relief – U.S. Five-Year Global HIV/AIDS Strategy" and sets out a course to have an immediate impact on people, and strengthen the capacity of governments and non-governmental organizations to quickly expand programs over the next several years. By the end of fiscal year 2005 the Emergency Plan will provide direct and indirect care and support for approximately 3,500,000 individuals, and facilitate access to antiretroviral therapy for at least 550,000 individuals.

Section III of this document provides information on each country's contribution to the total number of individuals to be receiving care and support and antiretroviral therapy by the end of FY 05. The country-specific target tables also provide the FY 08 care and treatment targets for each country. The FY 08 targets were set at the beginning of the Emergency Plan. The sum of all countries' FY 08 care/support targets equals the Emergency Plan's goal of 10 million individuals receiving care and support by the end of year five. The sum of all countries' FY 08 treatment targets equals the Emergency Plan's goal of 2 million people on treatment at the end of year five.

The fiscal year (FY) 2005 budget for the Emergency Plan for AIDS Relief (Emergency Plan) is $2.8 billion (see Table 1). This FY 2005 Operational Plan describes the planned and approved-to-date uses of $1.9 billion of Emergency Plan funding to expand integrated care, treatment and prevention programs in fifteen focus countries, to increase available resources for HIV/AIDS activities in other bilateral programs; to finance central programs that help focus countries achieve their goals; to provide a Rapid Expansion Fund; to provide US Government contributions to International Partnerships, including UNAIDS and the Global Fund to Fight AIDS, Tuberculosis and Malaria (Global Fund); to fund technical oversight and management, and to develop and maintain the Emergency Plan's strategic information/evaluation systems.

The planned uses of the remaining Emergency Plan funds for existing bilateral HIV/AIDS programs around the world; for international HIV/AIDS research through the HHS National Institutes of Health; for other international partners, such as IAVI and microbicide research; and for tuberculosis and malaria programs have already been described in a variety of congressional budget justification documents and briefing materials of USAID, HHS, DOD, DOL and the Department of State.

The $1.909 billion described in this Operational Plan is composed of:

$1,374 million from the FY 05 Global HIV/AIDS Initiative account (GHAI, STATE)
$   263 million from the FY 05 Child Survival and Health account (CSH, USAID)
$     88 million from the FY 04 Child Survival and Health account (CSH, USAID)
$     26 million from FY 2004 Prevention of Mother to Child Transmission funds (PMTCT, HHS)
$     99 million from the NIH budget (HHS)
$     59 million from the Global AIDS Program (CDC/GAP, HHS)

$1.909 billion Total

6

The FY 2005 figures are actual appropriation figures minus the rescission. Of funds appropriated in FY 2004, $88 million CSH was allocated to the Global Fund, but not provided as sufficient other donor funding was not available in time to meet congressional matching requirements. These funds have been carried-over to add to the potential US government FY 2005 contribution. $ 26 million PMTCT was part of a $149 million appropriation to HHS in FY 2004 that was to be used over two years for Prevention of Mother to Child Transmission.

This Operational Plan will program the $ 26 million to complete the allocation of funding appropriated for the Initiative.

Table 2 summarizes the $2.8 million FY 2005 Emergency Plan budget in terms of planned uses of funding, including the $1.9 billion described in detail in this Operational Plan. Table 3 summarizes the allocation of the $1.6 billion of the planned $1.9 billion whose specific use has been approved for implementation as of January 14 by the U.S. Global AIDS Coordinator. Funds not yet approved include: $63 million of funding for the Focus Countries, $50 million in additional funding for Other Bilateral Programs, $45 million for New Partners, $2 million for Technical Oversight and Management and $13 million for Strategic Information. In addition, $117 million for the Rapid Expansion Fund will be programmed after the Coordinator's office receives proposals from the focus countries to expand treatment activities. This will move us closer to the FY 2006 congressional targets for an appropriate allocation among prevention, treatment, and care and to increase the number of patients being supported for ART in FY 2005. We expect most of the remaining funding decisions to be made by the end of March 2005.

The Emergency Plan focus countries, all severely impacted by HIV/AIDS, are:  Botswana, Côte d'Ivoire, Ethiopia, Guyana, Haiti, Kenya, Mozambique, Namibia, Nigeria, Rwanda, South Africa, Tanzania, Uganda, Vietnam, and Zambia.

**PROGRESS TO DATE**

Please see the President's Emergency Plan for AIDS Relief – Engendering Bold Leadership - First Annual Report for a complete description of progress and achievements during FY 2004. The Emergency Plan's first Annual Report will track progress toward meeting first-year targets for prevention, care, and treatment in the focus countries as well as the Emergency Plan's work worldwide to turn the tide of global HIV/AIDS.

**DISTRIBUTION OF HIV/AIDS FUNDS**

The distribution of the FY 2005 Emergency Plan funds among prevention, treatment, and care is moving in the direction outlined in the authorization of the Emergency Plan. See Table 4 for the allocation of funds among program areas for activities that have been approved to date. 32 percent of the budget is allocated to prevention activities; 40 percent is allocated to treatment; and 28 percent of the budget is allocated to care. Of note, abstinence/faithfulness activities account for 8 percent of the total budget, and activities for orphans and vulnerable children account for 7 percent of the total amount. The percent for rphans and vulnerable children does not include substantial resources for anti-retroviral treatment for infants and children; these resources are captured in the percent of funds going to treatment. In addition, much of the New Partner Fund will be dedicated to AB

Exhibit 7

**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Assistant Attorney General          *Washington, D.C. 20530*

September 20, 2004

Honorable Alex M. Azar, II
General Counsel
Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Re:     Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") and United
        States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 ("AIDS
        Act")

Dear Alex:

    I understand that earlier this year the Department of Health and Human Services (HHS)
asked the Department of Justice (DOJ) whether HHS could implement certain provisions of the
TVPRA and of the AIDS Act. At that time, I understand that DOJ gave its tentative advice that
the so-called "organization restrictions" set forth in 22 U.S.C.A. § 7110(g)(2) and 22 U.S.C.A.
§ 7631(f) could, under the Constitution, be applied only to foreign organizations acting overseas.

    We have reviewed the matter further and we are withdrawing that tentative advice. The
statutes are clear on their face that the organization restrictions were intended by Congress to
apply without the limitations identified in our earlier advice. We have consulted with the Civil
Division and, in these circumstances, given that the provisions do not raise separation of powers
concerns and that there are reasonable arguments to support their constitutionality,[1] we believe
that HHS may implement these provisions.[2] If the provisions are challenged in court, the

---

    [1] Although the constitutionality of organization restrictions is a complex question, when, as here,
they are closely tailored to the purpose of the grant program, there are reasonable arguments to support their
constitutionality. *See South Dakota v. Dole*, 480 U.S. 203, 206-08 (1987) (holding that the government may
condition funds on the recipient's relinquishment of a right where the condition is directly related to the
purpose for which the funds are expended); *American Communications Ass'n v. Douds*, 339 U.S. 382, 390-
91 (1950) (upholding a government benefit tied to a restriction on the recipients' speech where the restriction
"bears reasonable relation to the evil which the statute was designed to reach").
    [2] Nothing in this letter should be construed to question the authority of the President to decline to
enforce a statute he views as unconstitutional. *See generally* Memorandum Opinion for the Counsel to the
President from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Presidential Authority
to Decline to Execute Unconstitutional Statutes*, 18 Op. O.L.C. 200 (1994).

Department stands ready to defend their constitutionality, in accordance with its longstanding practice of defending congressional enactments under such circumstances.[3]

        Please do not hesitate to contact me if you have any further questions.  I apologize for any confusion or inconvenience caused by our earlier tentative advice.

        Sincerely,

        /s/

        Daniel Levin
        Acting Assistant Attorney General

---

[3]  Consistent with that practice, any decision as to whether to appeal an adverse decision would be made by the Solicitor General.