## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DKT INTERNATIONAL, INC.** ) | |
| 1701 K Street, NW, Suite 900, ) | |
| Washington, DC 20006 ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **UNITED STATES AGENCY FOR** ) | |
| **INTERNATIONAL DEVELOPMENT** ) | **Civil Action Case No.** |
| Ronald Reagan Building ) | |
| Washington, D.C. 20523-0016 ) | |
| ) | |
| -and- ) | |
| ) | |
| **ANDREW S. NATSIOS, in his** ) | |
| **Official Capacity as ADMINISTRATOR,** ) | |
| **U.S. AGENCY FOR INTERNATIONAL** ) | |
| **DEVELOPMENT.** ) | |
| **Defendants.** ) | |

## COMPLAINT

**COMES NOW** Plaintiff DKT International, Inc. and files this Complaint against the

United States Agency for International Development, and its Administrator, and alleges as

follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this civil rights action seeking declaratory and injunctive relief to

protect Plaintiff's First Amendment right to freedom of speech. Plaintiff challenges the

constitutionality of the United States Agency for International Development's ("USAID")

enforcement of United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of

2003 ("Global AIDS Act"), 22 U.S.C.A. § 7601 *et seq.*, a law that conditions an organization's

eligibility for USAID funding upon that organization declaring its adherence to a particular

government policy. Plaintiff also challenges USAID's Acquisition & Assistance Policy

Directive 05-04, the implementing regulations issued by the Director of the Office of Acquisition

& Assistance on June 9, 2005. These regulations are unconstitutional on their face because they

make otherwise eligible organizations ineligible for USAID grants or contracts if they do not

expressly adopt the government's policy on prostitution.

## JURISDICTION AND VENUE

2.      This case arises under the First Amendment to the United States Constitution This

Court has jurisdiction over the Plaintiff's federal constitutional claims under 28 U.S.C. § 1331.

3.      Venue is proper in this District under 28 U.S.C. § 1391 because USAID is a U.S.

Government agency with its principal place of business in this District.

## PARTIES

4.      Plaintiff DKT International is a not-for-profit corporation with headquarters at

1701 K Street, NW, Suite 900, Washington DC 20006. As one of the largest providers of

family-planning and HIV/AIDS services, DKT International provides family planning and

HIV/AIDS prevention programming in Brazil, China, Egypt, Ethiopia, India, Indonesia,

Malaysia, Mexico, Philippines, Sudan, and Vietnam. DKT's programs currently serve just under

10 million couples. It has been eligible for, and has received USAID funds for HIV/AIDS

prevention programs.

5.      Defendant USAID is a U.S. Government Agency with headquarters at the Ronald

Reagan Building, Washington, D.C. 20523-0016.

6.     Defendant Andrew S. Natsios is the Administrator of USAID. He is sued in his official capacity.

## **FACTUAL BACKGROUND**

### The Legal Context

7.     In 2003, President Bush signed the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 ("Global AIDS Act"), 22 U.S.C.A. § 7601 *et seq.* into law. The Act contains two restrictions regarding prostitution. The first restriction, 22 U.S.C.A. § 7631(e), prohibits the use of U.S. Government funds under the Act from being spent on activities that "promote or advocate the legalization or practice of prostitution or sex trafficking." The second restriction provides, "no funds made available to carry out this Act may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking." 22 U.S.C.A. § 7631(f). The legislation exempts the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AID Vaccine Initiative and United Nations agencies.

8.     Responding to a request from the Department of Health and Human Services, the Department of Justice concluded in early 2004 that the provisions of 22 U.S.C.A. § 7631(f) could constitutionally be applied only to foreign organizations operating overseas in view of First Amendment considerations. In September 2004, the Department of Justice reversed itself. In the second opinion letter, the Department of Justice concluded, "...[I]n these circumstances, given that the provisions do not raise separation of powers concerns and that there are reasonable arguments to support their constitutionality, we believe that HHS may implement these provisions."

9.    On June 9, 2005, USAID released an Acquisition & Assistance Policy Directive
(AAPD), titled "AAPD 05-04 Implementation of the United States Leadership Against
HIV/AIDS, Tuberculosis and Malaria Act of 2003 -- Eligibility Limitation on the Use of Funds
and Opposition to Prostitution and Sex Trafficking." This policy "now appl[ies] to U.S.
organizations as well as foreign organization," and "require(s) recipients to agree that they
oppose prostitution and sex trafficking." The AAPD 05-04 provided clauses "to be included as
new standard provisions for assistance agreements and contracts that include HIV/AIDS funds."
In particular, AAPD 05-04 requires the following provision:

> as a condition of entering into this agreement or any subagreement,
> a non-governmental organization or public international
> organization recipient/subrecipient must have a policy explicitly
> opposing prostitution and sex trafficking.

A copy of AAPD 05-04 is attached as Exhibit A.

### DKT International's Work in Vietnam And USAID Funds

10.    Plaintiff DKT International is a U.S.-based, charitable organization providing
family-planning and HIV/AIDS prevention services in eleven countries around the world.
DKT's social marketing makes products and services affordable to poor populations by
subsidizing the price and by making effective use of marketing techniques and private sector
networks to deliver products and services. DKT International also regularly shares its
observations, information, research, and conclusions relating to its work with the public at large
in the United States, as well as with other non-governmental organizations through articles
published in relevant journals, books, and on its website.

11. Since 1993, DKT International has conducted innovative anti-HIV/AIDS and family planning social marketing programs in Vietnam, distributing over four hundred million condoms throughout Vietnam's sixty-four provinces.

12. DKT International receives funds from multiple donors around the world for its anti-HIV/AIDS work -- including other government donors, such as Australia, Germany, and the United Kingdom. In addition, it receives USAID funding for anti-HIV/AIDS work, often through a subgrant of USAID funds from other direct grantees of USAID.

13. DKT International's office in Vietnam has been implementing the "100% Condom Access" project, with USAID funds under the IMPACT project (Implementing AIDS Prevention and Care Project) since 1998. Another non-governmental agency, Family Health International, ("FHI") was the direct grantee from USAID. With USAID's permission, FHI gave USAID subgrants to DKT International. The IMPACT project involves targeted AIDS prevention social marketing activities in six of the most high-risk provinces in Vietnam. On July 1, 2003, DKT International was awarded another Cooperative Agreement (#IMPACT HRN-A-00-97-00017-00), a $499,225 two-year grant to continue its work under the IMPACT program

14. On June 27, 2005, FHI notified DKT International's Vietnam Country Representative that FHI had received permission from USAID to fund a condom-lubricant proposal DKT International had submitted to FHI and USAID several months earlier. On June 28, 2005, FHI further informed DKT International that it would provide DKT with $60,000 in USAID funds to undertake that proposal.

15. On June 27, 2005, the DKT International Country Representative in Vietnam also received from the FHI Vietnam Country Director in Hanoi an already executed no-cost, two-

month extension to the existing IMPACT funding agreement. The extension amendment, signed by the FHI Country Director, allowed DKT International to continue using unspent grant funds for two months beyond the original authorized period of performance, which ended on June 30, 2005. As of July 7, 2005, approximately $57,000 of the original grant remained unspent.

16.     The extension amendment included a set of attachments. The DKT International Country Representative signed the agreement, but immediately voided his signature when he discovered that FHI and USAID required him to certify that "DKT International hereby certifies that it has a policy explicitly opposing prostitution and sex trafficking." The amendment further provided, "This certification is an express term and condition of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by FHI or USAID prior to the end of its term."

17.     USAID's Acquisition and Assistance Policy Directive (AAPD) 05-04 required FHI to require its subgrantee, DKT International, to certify that it has a policy opposing prostitution.

DKT International's Refusal to Sign the Certification

18.     The DKT International Country Representative refused to sign the certification that accompanied the no-cost extension documents and promptly requested a waiver.

19.     On July 5, 2005, the DKT International Country Representative received a denial of that request. The FHI County Director stated:

> I have confirmed that FHI will not be able to execute the no-cost extension unless DKT is able to sign the anti-prostitution statement. Furthermore, we would not be able to support DKT for any activities with USAID funds if this is not signed. Please discuss with DKT management if there is any flexibility on this and let me know.

20.    On July 13, 2005, FHI reversed itself on the no-cost extension issue.  It notified DKT that the no-cost extension amendment could go forward without the certification because "the funds for DKT's sub-agreement with FHI originated prior to the application of the USAID guidance on anti-prostitution."

21.    The refusal to provide new USAID funding, however, remained firmly in place. FHI cancelled the earlier-promised $60,000 USAID grant for packaging of lubricants and condoms in Vietnam because DKT refused to sign the USAID-required certification.  The FHI Country Director informed DKT that "it will not be possible for FHI to fund DKT to carry out this work."  FHI then referred to the required certifications, and noted, "You have indicated that DKT declines to sign the certification form provided to you to [with those certifications].  The FHI policy and certification requirement is in compliance with FHI's Agreement with USAID, including USAID Acquisition and Assistance Policy Directive 05-04 issued June 9, 2005.  Thus, FHI is unable to provide additional funding to DKT."

22.    In addition, USAID representative Dan Levitt told DKT's Vietnam Country Representative that DKT would be ineligible for USAID funding unless it certified that it had a policy explicitly opposing prostitution.

### The Impact of the Certification Requirement on DKT International

23.    DKT has no policy on prostitution and does not wish to adopt one.  It believes it has a First Amendment right not to do so.  In addition, as an organization working to prevent the spread of HIV/AIDS, it strongly believes it can best do that in the many countries in which it works by maintaining neutrality on the controversial question of how to handle the complex problems that arise at the intersection of the HIV/AIDS epidemic and prostitution.

24.     In addition, if DKT were to adopt the government-prescribed policy to be eligible to receive USAID funding, the policy would then require it to restrict its own speech, outside of its work with USAID funds, to speech consistent with that policy. Thus, the USAID-required policy would restrict even speech and activities paid for with private and non-U.S.-government funds.

25.     As a result of the statute and the USAID requirement, DKT has been penalized for exercising its First Amendment right not to speak by losing the already-agreed-upon USAID funding of $60,000 for the condom-lubricant proposal in Vietnam.

26.     As a result of the statute and the USAID requirement, DKT has also been penalized for exercising its First Amendment right not to speak by being excluded from eligibility for all future USAID grant funds. DKT International has previously been eligible to receive USAID funds, and has received them. Indeed, USAID funding represents approximately 16% of DKT International's funding worldwide. DKT International intends to continue to provide HIV/AIDS prevention programming of the sort that has been eligible for USAID funding and is ready, willing, and able to apply for such funding, for which it would be eligible if not for USAID's certification requirement.

27.     In addition, the statute and regulation, which condition eligibility for USAID grants on adopting a policy "explicitly opposing prostitution," are vague because DKT cannot reasonably predict whether its other speech and activities (funded by private donors and other governments) might be deemed by USAID to insufficiently oppose prostitution. And the consequences for predicting wrongly are potentially significant: organizations who are found to have violated their agreements by not having an adequate policy (or not adhering to it) may be required to repay in full an already-spent grant. Further consequences, such as debarment or false claims actions are also not beyond the realm of possibility.

28.     The statutory and regulatory provisions requiring that DKT not use USAID funds to "promote the . . . practice of prostitution," 22 U.S.C. § 7631(e), and USAID AAPD 05-04 are also unconstitutionally vague because DKT cannot predict how USAID will interpret that phrase. Especially in the context of HIV/AIDS services provided to sex workers, virtually any assistance provided to a sex worker might be construed to "promote" the sex worker's "practice." And while some activities have been excluded by the statute, such as "palliative care, treatment, post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides," 22 U.S.C. § 7631(e), reasonable people could easily disagree on whether a range of other activities would promote the practice of prostitution. Given the significant penalties that accompany guessing wrong on how USAID will construe the language, the statute and regulation will unconstitutionally chill protected speech.

29.     Because DKT International receives funds from multiple donors around the world, the adoption of the U.S.-government compelled organization-wide policy opposing prostitution is not limited to programs implemented with U.S. government funds. Instead, the compelled adoption of such a policy would restrict DKT International's ability to carry out programs funded entirely by non-U.S. government donors, including private, governmental, and international organizations.

## CAUSES OF ACTION

### COUNT I

30.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-29 above.

31.     The Act and USAID violate the First Amendment to the United States Constitution because they condition eligibility for USAID funding for U.S. organizations on expressly adopting the U.S. government's political viewpoint on prostitution.

32.     The Act and USAID regulations compel speech in violation of the First Amendment of the United States Constitution and in violation of the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq..

### COUNT II

33.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-32 above.

34.     The Act and the USAID regulations restrict and burden constitutionally-protected expression of U.S. organizations that is supported exclusively by private, international, or other

donor funds in violation of the First Amendment of the United States Constitution and the

Administrative Procedures Act, 5 U.S.C. §§ 551 et seq.

## COUNT III

35.     Plaintiff re-alleges and incorporates herein by reference the allegations of

paragraphs 1-34 above.

36.     The Act and USAID regulations are unconstitutionally vague, in violation of the

First Amendment of the United States Constitution and the Administrative Procedures Act, 5

U.S.C. §§ 551 et seq.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests that this Court:

A)      Declare that  22 U.S.C.A. §§  7631(e) and (f) of the Global AIDS Act are

unconstitutional to the extent they require U.S. organizations to have a

policy explicitly opposing prostitution;

B)      Declare that the USAID Implementing Regulations, codified at AAPD 05-

04 are unconstitutional to the extent that they requires U.S. organizations

to have a policy explicitly opposing prostitution;

C)      Permanently enjoin defendants from enforcing those provisions;

D)      Order USAID to instruct Family Health International that USAID

authorizes FHI to disburse the $60,000 grant for the Vietnam condom-

lubricant proposal;

E)      Award Plaintiff such costs and fees as are allowed by law; and

F)     Grant Plaintiff such other and further relief as this Court deems equitable,

just, and proper.

Respectfully submitted,
DKT INTERNATIONAL, INC.

By _____
One of Plaintiff's Attorneys

Julie M. Carpenter
   D.C. Bar No. 418768
Martina E. Vandenberg
   D.C. Bar No. 476685
JENNER & BLOCK, LLP
601 13th Street, N.W.
Washington, DC  20005
(202) 639-6000


OF COUNSEL
David S. Udell*
Rebekah Diller*
Laura K. Abel*
Brennan Center for Justice at NYU School of Law
161 Ave. of the Americas
12th Floor
New York, NY  10013

* Not admitted in the District of Columbia

## CERTIFICATE OF SERVICE

The undersigned certifies that on the __11 day of August 2005, a true and correct copy of the foregoing document was delivered via hand delivery to:

Daniel Van Horn
Office of the United States Attorney, Civil Division
501 3rd Street, NW
Washington, DC 20001

and by certified mail to:

Andrew S. Natsios
Administrator
U.S. Agency for International Development
1300 Pennsylvania Ave, NW
Room 6.09
Washington, DC 20523

John S. Gardner
Office of General Counsel
U.S. Agency for International Development
1300 Pennsylvania Ave, NW
Room 6.06
Washington, DC 20523

The Hon. Alberto R. Gonzales
Attorney General of the United States
Department of Justice
Room 4400
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

Julie M. Carpenter



## FROM THE AMERICAN PEOPLE

# Acquisition & Assistance Policy Directive (AAPD)

**From the Director, Office of Acquisition & Assistance   Issued: June 9, 2005**

## AAPD 05-04

## Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 — Eligibility Limitation on the Use of Funds and Opposition to Prostitution and Sex Trafficking

Subject Category:       ACQUISITION MANAGEMENT, ASSISTANCE

Type:                POLICY

---

AAPDs provide information of significance to all agency personnel and partners involved in the Acquisition and Assistance process.  Information includes (but is not limited to): advance notification of changes in acquisition or assistance regulations; reminders; procedures; and general information.  Also, AAPDs may be used to implement new requirements on short-notice, pending formal amendment of acquisition or assistance regulations.

AAPDs are EFFECTIVE AS OF THE ISSUED DATE unless otherwise noted in the guidance below; the directives remain in effect until this office issues a notice of cancellation.

---

This AAPD: ☐ Is New  ☒ Replaces/ ☐ Amends CIB/AAPD No: 04-04 (Revision 2)

| Applicable to: | Precedes change to: |
|---|---|
| ☒ Existing awards; ☐ Modification required | ☒ AIDAR Part(s) tbd  Appendix |
| ☐ No later than | ☒ USAID Automated Directives System (ADS) Chapter 302, 303, and 308 |
| ☒ As noted in guidance below | |
| ☒ RFPs/RFAs issued on or after the effective date of this AAPD; all other Pending Awards, i.e., 8(a), sole source, IQC | ☒ Code of Federal Regulations 22 CFR 226 |
| | ☐ Other |
| ☐ Other or N/A | ☐ No change to regulations |

☒ New Provision/Clause Provided Herein:  If checked, scheduled update to Prodoc:  Dec. 2005

---

_(signed copy on file)_
Jeffery Bell
Acting Director

## 1. <u>PURPOSE</u>:

The purpose of this AAPD is to provide clauses to be included as new standard provisions for assistance agreements and contracts that include HIV/AIDS funds. These provisions: (i) permit recipients to not endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to not endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection; (ii) prohibit the funds provided under the agreement to be used to promote the legalization or practice of prostitution or sex trafficking; and (iii) require recipients to agree that they oppose prostitution and sex trafficking.

## 2. <u>BACKGROUND</u>:

The United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003, Pub.L. No. 108-25 (2003) (the "AIDS Authorization") authorizes funds to be appropriated for HIV/AIDS activities for the fiscal years 2004-2008. The AIDS Authorization includes, among other things, certain restrictions on the use of HIV/AIDS funds, and requires recipients of those funds to have certain policies in place. It also permits an organization to receive funds even if such organization cannot endorse, utilize or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

Section 301 of the AIDS Authorization, entitled "Assistance to Combat HIV/AIDS," includes the following provisions:

"(d) ELIGIBILITY FOR ASSISTANCE- An organization that is otherwise eligible to receive assistance under section 104A of the Foreign Assistance Act of 1961 (as added by subsection (a)) or under any other provision of this Act (or any amendment made by this Act) to prevent, treat, or monitor HIV/AIDS shall not be required, as a condition of receiving the assistance, to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.

(e) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to promote or advocate the legalization or practice of prostitution or sex trafficking. Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and when proven effective, microbicides.

(f) LIMITATION. – No funds made available to carry out this Act, or any amendment made by this Act, may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking."

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

The Consolidated Appropriations Act of 2004 and 2005, Division D – Foreign Operations, Export Financing, and Related Programs Appropriations ("FY 04 and FY 05 Appropriations Acts"), Title II – Bilateral Economic Assistance, United States Agency for International Development, Child Survival and Health Programs Fund include the following provision, "That information provided about the use of condoms as part of projects or activities that are funded from amounts appropriated by this Act shall be medically accurate and shall include the public health benefits and failure rates of such use."

In addition, the FY 04 Appropriations Act amended section 301(f) of the AIDS Authorization by exempting the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative and any "United Nations agency" from that section. The Statement of Managers of the FY 04 Appropriations Act states that the conferees "intend that for purposes of this provision, the World Health Organization includes its six regional offices:  The Americas (PAHO); South-East Asia (SEARO); Africa (AFRO); Eastern Mediterranean (EMRO); Europe (EURO); and Western Pacific (WPRO)."

Although the above-named public international organizations are exempt from section 301(f) of the AIDS Authorization, they are subject to the AAPD 05-04 clauses that implement sections 301(d) and (e) of the AIDS Authorization.  However, this AAPD does not apply to USAID contributions to multidonor trust funds, such as to the Trust Fund for the Global Fund to Fight AIDS, Tuberculosis and Malaria.

Consistent with guidance from the U.S. Department of Justice, the AAPD 05-04 clauses that implement section 301(f) of the AIDS Authorization now apply to U.S. organizations as well as foreign organizations.

Prior to receiving HIV/AIDS funds under a grant or cooperative agreement, U.S. and non-U.S. non-governmental organizations that are prime recipients must provide a certification that they are in compliance with the standard provisions "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" that appear below.  USAID intends to require prime contactors to provide a similar certification and is currently seeking the approval of the Federal Acquisition Regulation Council to do so.  Pending such approval, USAID will not require contractors to provide a certification.

OMB has approved the Agency's information collection request under the Paperwork Reduction Act, allowing USAID to implement the above stated requirements in conformity with the Paperwork Reduction Act.  Therefore, USAID will require (i) U.S. and non-U.S. nongovernmental organizations, certain public international organizations and contractors and  subcontractors to have a policy explicitly opposing prostitution and sex trafficking; (ii) U.S. and non-U.S. non-governmental organizations receiving HIV/AIDS funds under a grant or cooperative agreement to provide a certification that they are in compliance with the standard provisions "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking"

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

3

that appear below; and (iii) all recipients of HIV/AIDS fund to ensure that information provided about the use of condoms as part of projects funded from such monies shall be medically accurate and include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID: HIV/STI Prevention and Condoms."   (OMB No.: 0412-0568)

## 3. GUIDANCE:

A.  For Assistance Awards (grants and cooperative agreements) to U.S. non-governmental, non-U.S. non-governmental, and Public International Organizations (PIOs):

I.  Eligibility

The following provisions must be included in each new Request for Applications (RFA) and Annual Program Statement (APS) utilizing HIV/AIDS funding.  When designing a program for HIV/AIDS the SO Team or requiring office must be mindful of the first clause below.  The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

These provisions also must be included in the Standard Provisions of any new grant or cooperative agreement to a public international organization or a U.S. or non-U.S. non-governmental organization financed with FY04-FY08 HIV/AIDS funds or modification to an existing grant or cooperative agreement that adds FY04-FY08 HIV/AIDS funds.

>  "ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (ASSISTANCE) (JUNE 2005)
>
>  An organization that is otherwise eligible to receive funds under this agreement to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.
>
>  CONDOMS (ASSISTANCE) (JUNE 2005)
>  Information provided about the use of condoms as part of projects or activities that are funded under this agreement shall be medically accurate and shall include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID: HIV/STI Prevention and Condoms.  This fact sheet may be accessed at:
>  http://www.usaid.gov/our_work/global_health/aids/TechAreas/prevention/condomfactsheet.html

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

4

II. Limitation on the Use of Funds

The following must be included in the Standard Provisions of any grant or cooperative agreement or subagreement funded with FY04-FY08 HIV/AIDS funds with a U.S. nongovernmental organization, non-U.S., non-governmental organization or public international organizations.

"PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ASSISTANCE) (JUNE 2005)

(a)  The U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons.  None of the funds made available under this agreement may be used to promote or advocate the legalization or practice of prostitution or sex trafficking.  Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(b)  Except as noted in the second sentence of this paragraph, as a condition of entering into this agreement or any subagreement, a non-governmental organization or public international organization recipient/subrecipient must have a policy explicitly opposing prostitution and sex trafficking.  The following organizations are exempt from this paragraph:  the Global Fund to Fight AIDS, Tuberculosis and Malaria; the World Health Organization; the International AIDS Vaccine Initiative; and any United Nations agency.

(c)  The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.  22 U.S.C. 7102(9).

(d)  The recipient shall insert this provision, which is a standard provision, in all subagreements.

(e)  This provision includes express terms and conditions of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by USAID prior to the end of its term.

(End of Provision)"

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

5

III. Certification

This certification requirement only applies to the prime recipient. Before a U.S. or non-U.S. non-governmental organization receives FY04-FY08 HIV/AIDS funds under a grant or cooperative agreement, such recipient must provide to the Agreement Officer a certification substantially as follows:

> "[Recipient's name] certifies compliance as applicable with the standard provisions entitled "Condoms" and "Prohibition on the Promotion or Advocacy of the Legalization or Practice of Prostitution or Sex Trafficking" included in the referenced agreement."

B. For Contracts:

I. Eligibility

The following provisions must be included in each new solicitation and contract utilizing FY04-FY08 HIV/AIDS funding. When designing a program for HIV/AIDS the SO Team or requiring office must be mindful of the first clause below. The evaluation criteria should not give any special advantage to an organization that endorses or utilizes a multisectoral approach (multisectoral in the legislation refers to Abstinence, Be Faithful/Behavior Change, and Condoms).

In addition, these provisions are to be included when any existing contract is amended to add FY04-FY08 HIV/AIDS funding.

> "ORGANIZATIONS ELIGIBLE FOR ASSISTANCE (ACQUISITION) (JUNE 2005)
>
> An organization that is otherwise eligible to receive funds under this contract to prevent, treat, or monitor HIV/AIDS shall not be required to endorse or utilize a multisectoral approach to combatting HIV/AIDS, or to endorse, utilize, or participate in a prevention method or treatment program to which the organization has a religious or moral objection.
>
>
> CONDOMS (ACQUISITION) (JUNE 2005)
>
> Information provided about the use of condoms as part of projects or activities that are funded under this contract shall be medically accurate and shall include the public health benefits and failure rates of such use and shall be consistent with USAID's fact sheet entitled, "USAID: HIV/STI Prevention and Condoms. This fact sheet may be accessed at:
> http://www.usaid.gov/our_work/global_health/aids/TechAreas/prevention/condomfactsheet.html

AAPD 05-04 Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

II. Limitation on the Use of Funds

The following must be included in the Schedule of any contract that includes FY04-FY08 HIV/AIDS funds.

"PROHIBITION ON THE PROMOTION OR ADVOCACY OF THE LEGALIZATION OR PRACTICE OF PROSTITUTION OR SEX TRAFFICKING (ACQUISITION) (JUNE 2005)

(a)  This contract is authorized under the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 (P.L. 108-25).  This Act enunciates that the U.S. Government is opposed to prostitution and related activities, which are inherently harmful and dehumanizing, and contribute to the phenomenon of trafficking in persons.  The contractor shall not use any of the funds made available under this contract to promote or advocate the legalization or practice of prostitution or sex trafficking.  Nothing in the preceding sentence shall be construed to preclude the provision to individuals of palliative care, treatment, or post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides.

(b)  Except as provided in the second sentence of this paragraph, as a condition of entering into this contract or subcontract, a non-governmental organization or public international organization contractor/subcontractor must have a policy explicitly opposing prostitution and sex trafficking.  The following organizations are exempt from this paragraph:  the Global Fund to Fight AIDS, Tuberculosis and Malaria; the World Health Organization; the International AIDS Vaccine Initiative; and any United Nations agency.

(c)  The following definition applies for purposes of this provision:

Sex trafficking means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.  22 U.S.C. 7102(9).

(d)  The contractor shall insert this clause in all subcontracts.

(e)  Any violation of this clause will result in the immediate termination of this contract by USAID."

If the contract provides for the contractor to execute grants to non-governmental organizations (not-for-profits or for-profits), per ADS 302.5.6 Grants under Contracts, then the contractor must comply with the assistance provisions in Section 3.A of this AAPD when awarding grants or cooperative agreements under its contract (in compliance with ADS 302.5.6(c) and (d)).

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 –
Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

## 4. **POINTS OF CONTACT:**

USAID Contracting Officers and Agreement Officers may direct their questions about this AAPD to Diane M. Howard, M/OAA/PE, Phone:  (202) 712-0206 e-mail: dhoward@usaid.gov, or Ann Cataldo, M/OAA/PE, Phone (202) 712-4886, e-mail acataldo@usaid.gov.

Contractors, recipients, and prospective offerors for contracts or assistance awards must direct their questions to the cognizant Contracting Officer or Agreement Officer for the award.

All other inquiries about this AAPD may be addressed to Diane Bui, GC/GH & EGAT, Phone (202) 712-0529 e-mail: dibui@usaid.gov.

AAPD 05-04  Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 – Eligibility Limitation on the Use of Funds and Opposition to Opposition to Prostitution and Sex Trafficking

8