**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

ALLIANCE FOR OPEN SOCIETY
INTERNATIONAL, INC. *et al.,*

                              Plaintiffs,

                                                    05 Civ. 8209 (VM) (DF)

v.

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT *et al.,*

                              Defendants.
-----------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO**
**FILE A SECOND AMENDED COMPLAINT AND MOTION BY GLOBAL HEALTH**
**COUNCIL AND INTERACTION FOR A PRELIMINARY INJUNCTION**

Richard A. Johnston*                        Laura K. Abel (LA 6831)
Wilmer Cutler Pickering Hale and Dorr LLP   Rebekah Diller (RD 7791)
60 State Street                             David S. Udell (DU 4762)
Boston, MA 02109                            BRENNAN CENTER FOR JUSTICE
(617) 526-6000                              AT NYU SCHOOL OF LAW
                                            161 Avenue of the Americas, 12th Floor
                                            New York, NY  10013
David W. Bowker (DB 3029)                   (212) 992-8635
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

* admitted pro hac vice                     Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................3

I.      GHC AND INTERACTION ARE LIKELY TO SUCCEED ON THEIR
        COMPELLED SPEECH AND VAGUENESS CLAIMS. ....................................3

        A.      The Policy Requirement and Guidelines Impermissibly Compel Speech
                and Discriminate Based on Viewpoint. ....................................................3

        B.      GHC and InterAction Are Likely to Prevail on Their Claim That the
                Policy Requirement and Guidelines Are Unconstitutionally Vague. ......6

        C.      GHC and InterAction Have Associational Standing to Assert the
                Compelled Speech and Vagueness Claims of Their Members. ...............7

                1.      GHC and InterAction Members Have Suffered Injuries in Fact
                        Sufficient to Assert Compelled Speech and Vagueness Claims. ....8

                2.      The Compelled Speech and Vagueness Claims of InterAction and
                        GHC Do Not Require Individualized Determinations. ...................8

II.     GHC AND INTERACTION ARE LIKELY TO SUCCEED ON THEIR CLAIM
        THAT THE POLICY REQUIREMENT AND GUIDELINES FAIL
        HEIGHTENED SCRUTINY. ...............................................................................9

        A.      The Policy Requirement and Guidelines Fail Both Narrow Tailoring and
                the Adequate Alternative Channels Test....................................................9

                1.      The Policy Requirement, Even as Modified by the Guidelines,
                        Continues to Impose a Blanket Ban on the Members' Ability to Speak
                        Through an Affiliate....................................................................10

                2.      Defendants Have Not Put Into Dispute Plaintiffs' Allegations
                        Regarding the Burdens the Policy Requirement and Guidelines
                        Impose on All InterAction and GHC Members. ...........................12

                3.      Defendants Have Not Offered Any Valid Justification for the
                        Harshness of the Guidelines.........................................................14

        B.      InterAction and GHC Have Associational Standing Under the Narrow
                Tailoring and Adequate Alternative Channel Tests................................15

1.    GHC and InterAction Members Have Suffered Injury in Fact Sufficient to Assert an Unconstitutional Conditions Claim. .........................15

2.    The Unconstitutional Conditions Claim of GHC and InterAction Does Not Require Individualized Determinations. .......................................16

III.    GHC's Claims Are Not Res Judicata. ...................................................................................17

A.    There Is No Privity Between DKT and GHC. ........................................................18

B.    The Vagueness and Unconstitutional Conditions Challenges to the Policy Requirement as Amended by the Guidelines Were Not and Could Not Have Been Asserted in DKT. ..................................................................................19

CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*AOSI v. USAID*,
254 F. App'x 843, 2007 WL 3334335 (2d Cir. Nov. 8, 2007) ..............................................5, 9

*AOSI v. USAID*,
430 F. Supp. 2d 222 (S.D.N.Y. 2006)............................................................................1, 4, 9

*Alpert's Newspaper Delivery, Inc. v. New York Times Co.*,
876 F.2d 266 (2d Cir. 1989)............................................................................................18, 19

*Board of County Commissioners v. Umbehr*,
518 U.S. 668 (1996)................................................................................................................5

*Brooklyn Legal Services Corp. v. LSC*,
462 F.3d 219 (2d Cir. 2006).......................................................................................... *passim*

*Cantwell v. Connecticut*,
310 U.S. 296 (1940)..............................................................................................................15

*City of Lakewood v. Plain Dealer Publishing Co.*,
486 U.S. 750 (1988)............................................................................................................7, 15

*DKT International v. USAID*,
477 F.3d 758 (D.C. Cir. 2007) .................................................................................................5

*FCC v. League of Women Voters*,
468 U.S. 364 (1984)................................................................................................…….. 11

*Freedman v. Maryland*,
380 U.S. 51 (1965)................................................................................................................15

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)................................................................................................................6

*Guardians Association of New York City Police Department, Inc. v. Civil Service Commission*,
490 F.2d 400 (2d Cir. 1973)..................................................................................................14

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977)................................................................................................................7

*Lovell v. Griffin*,
303 U.S. 444 (1938)..............................................................................................................15

*McConnell v. FEC,*
    540 U.S. 93 (2003)................................................................................................18

*Monahan v. New York City Department of Corrections,*
    214 F.3d 275 (2d Cir. 2000)..............................................................17, 18, 19

*NLRB v. United Technologies Corp.,*
    706 F.2d 1254 (2d Cir. 1983)............................................................................19

*NYC C.L.A.S.H., Inc. v. City of New York,*
    315 F. Supp. 2d 461 (S.D.N.Y. 2004)...............................................................17

*N.Y. State Board of Elections v. Lopez Torres,*
    -- U.S. --, 128 S. Ct. 791 (2008) ......................................................................18

*National Association of College Bookstores, Inc. v. Cambridge University Press,*
    990 F. Supp. 245 (S.D.N.Y. 1997)....................................................................16

*Planned Parenthood of Cent. & N. Ariz. v. Arizona,*
    789 F.2d 1348 (9th Cir.), .. *aff'd mem.*, 479 U.S 925 (1986)…………………………………5

*Phillips v. Kidder, Peabody & Co.,*
    750 F. Supp. 603 (S.D.N.Y. 1990).....................................................................19

*Regan v. Taxation With Representation,*
    461 U.S. 540 (1983)...........................................................................................11

*Rent Stabilization Association v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ..................................................................................16

*Republic of Philippines v. New York Land Co.,*
    852 F.2d 33 (2d Cir. 1988).................................................................................14

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002)...........................................................................................18

*Ruiz v. Commissioner of Department of Transportation of City of New York,*
    858 F.2d 898 (2d Cir. 1988)...............................................................................18

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47 (2006).............................................................................................8

*Rust v. Sullivan,*
    500 U.S. 173 (1991)..................................................................................4, 5, 11

*Staub v. Baxley*,
   355 U.S. 313 (1958)...........................................................................................15

*Transportation Alternatives, Inc. v. City of New York*,
   340 F.3d 72 (2d Cir. 2003)..................................................................................6

*Velazquez v. LSC*,
   349 F. Supp. 2d 566 (E.D.N.Y. 2004), *rev'd on other grounds*, 462 F.3d 219
   (2d Cir. 2006)....................................................................................................11

*Velazquez v. LSC*,
   531 U.S. 533 (2001)...........................................................................................18

*Velazquez v. LSC*,
   985 F. Supp. 323 (E.D.N.Y. 1997), *aff'd in part, rev'd in part,* 164 F.3d 757 (2d Cir.
   1999)..................................................................................................................11

*Velazquez v. LSC*,
   164 F.3d 757 (2d Cir. 1999), *aff'd*, 531 U.S. 533 (2001) ............................... *passim*

*Watchtower Bible & Tract Society v. Village of Stratton*,
   536 U.S. 150 (2002)...........................................................................................15

## STATUTES & RULES

22 U.S.C. § 7631(f)................................................................................................ *passim*

45 C.F.R. § 1610.8...................................................................................................3

72 Fed. Reg. 41,076 (July 26, 2007).................................................................... *passim*

USAID, Acquisition & Assistance Policy Directive 05-04 Amendment 1 ………………..*passim*

## PRELIMINARY STATEMENT

The government's opposition brief is written as if this Court had never issued its Decision and Order of May 9, 2006. For example, the government argues that it is neither "compelling speech" nor "discriminating based on viewpoint," Defs.' Br., March 17, 2008 ("Defs.' Br."), at 33, in apparent disregard of this Court's holding that the Policy Requirement[1] "impermissibly discriminates based on viewpoint and compels speech," and thus "violates the First Amendment," *AOSI v. USAID*, 430 F. Supp. 2d 222, 276 (S.D.N.Y. 2006). Having sidestepped a Second Circuit decision by issuing so-called "Guidelines"[2] that, in fact, exacerbate the Policy Requirement's constitutional defects, the government now seeks to avoid this Court's prior holding by claiming that the legal landscape has changed and that "further fact-finding is needed." Defs.' Br. at 2, 20.

Each of the government's points – on associational standing, individual standing, and the likelihood of success on the merits – rests on two propositions: first, that the sole issue now before the Court is whether the Guidelines provide an adequate alternative channel for speech; and second, that this adequate alternative channel defense creates individual factual questions for each member of Global Health Council ("GHC") and InterAction (together, "the associations").

But the government's focus on an alternative channel and purported questions of fact is simply unresponsive to the associations' compelled speech and vagueness claims. The Policy Requirement forces grantees to espouse the government's point of view on prostitution. This compelled speech violation cannot be cured by the presence of an alternative channel for speech (even if such a channel were adequate, which is not the case here), because the associations'

---

[1] 22 U.S.C. § 7631(f).
[2] USAID, Acquisition & Assistance Policy Directive 05-04 Amendment 1 ("USAID Guidelines") and HHS, Office of Global Health Affairs, Guidance Regarding Section 301(f) of the U.S. Leadership Against HIV/AIDS, Tuberculosis & Malaria Act of 2003, 72 Fed. Reg. 41,076 (July 26, 2007) ("HHS Guidelines") (collectively, "Guidelines").

members seek the right *not to be compelled to speak at all*.  The facts surrounding this compelled

speech claim are entirely undisputed.  Likewise, the associations' vagueness claim cannot be

satisfied by an alternative channel, and turns on facts that are entirely undisputed.  Nor are

Defendants helped by their relentless invocation of *Brooklyn Legal Services Corp. v. LSC*

("*BLS*"), 462 F.3d 219 (2d Cir. 2006), and *Velazquez v. LSC* ("*Velazquez I*"), 164 F.3d 757 (2d

Cir. 1999), *aff'd*, 531 U.S. 533 (2001) (together, "the *LSC cases*"), since neither decision

adjudicated a compelled speech or vagueness claim.  For these reasons, the associations are

entitled to full relief based on their compelled speech and vagueness claims.

If the Court agrees, it need not even reach the unconstitutional conditions claim (and the

government's alternative channel contentions).  Nonetheless, Plaintiffs are entitled to prevail on

that claim as well.  The Policy Requirement and Guidelines are not narrowly tailored and do not

provide an alternative channel as a matter of undisputed fact because, unlike other regimes that

require separation of facilities, finances and/or personnel, they force recipients to create a wholly

new entity over which they have no control, and thereby fail to accord the recipients any

opportunity at all to advance their own speech.  Moreover, the Guidelines do not provide an

adequate alternative channel because they impose vast burdens that are common to all members

without any justification.  Defendants have not presented a single piece of evidence to challenge

these facts.

Hence, the proposed Second Amended Complaint and preliminary injunction motion

require no individualized factual inquiries, involve no speculation about the members' injury,

and establish that the associations are likely to succeed on the merits.  Accordingly, the

associations should be extended the preliminary injunction protection left intact by the Second

Circuit on remand.

## ARGUMENT

I.    **GHC AND INTERACTION ARE LIKELY TO SUCCEED ON THEIR COMPELLED SPEECH AND VAGUENESS CLAIMS.**

    A.    **The Policy Requirement and Guidelines Impermissibly Compel Speech and Discriminate Based on Viewpoint.**

It is undisputed that, even as amended by the Guidelines, the Policy Requirement continues to require independent, non-profit organizations to speak the government's point of view on prostitution in order to receive government funds, even if those organizations establish affiliate organizations that engage in other speech pursuant to the Guidelines. As Plaintiffs demonstrated in their opening brief, the Policy Requirement and Guidelines thus continue to violate the First Amendment prohibitions against government-orchestrated compelled speech and viewpoint discrimination. Pls.' Br., Feb. 8, 2008 ("Pls.' Br."), at 34-36.

Having refused to cure this plain compelled speech violation, the government stakes its case on *BLS* and *Velazquez I. See* Defs.' Br. at 17-20. According to Defendants, these two decisions on the LSC separation regulation, 45 C.F.R. § 1610.8, "addressed *essentially identical situations* as in this action" and therefore control the resolution of Plaintiffs' compelled speech and viewpoint discrimination claim. *See* Defs.' Br. at 17 (emphasis added). Both assertions are wrong.[3]

First, the *LSC* decisions are inapposite here because the LSC restrictions did not compel speech. The LSC restrictions barred legal aid offices that received federal funds from engaging in certain activities, such as representing immigrants and bringing class actions, but did not require them to speak out against such representation. The cases considered whether that

---

[3] Plaintiffs here discuss the differences pertinent to their compelled speech and viewpoint discrimination claims. Additional differences relevant to Plaintiffs' vagueness and unconstitutional conditions claims are discussed below in Section I.B and II.

separation regime provided grantees an adequate alternative channel for the prohibited

expression. *See BLS*, 462 F.3d at 222-23. An alternative channel, however, has nothing to do

with and is no remedy for compelled speech. The members here wish not to adopt

organizational policies on prostitution; the opportunity to establish an affiliate does not offer

them any means to stay silent.

Second, by condemning viewpoint discrimination of the very sort imposed here, the *LSC*

cases sharply undercut Defendants' position. The *BLS* panel opined that to the extent "some of

the 1996 Act's restrictions are directed toward speech on the 'highest rung' of First Amendment

values," – e.g., expressing views on "public issues," "critici[zing] government," or "advocat[ing]

change in government policy" – such restrictions would require "closer attention" or "heightened

scrutiny." *BLS*, 462 F.3d at 230  Applying this principle, *BLS*  reiterated *Velazquez I*'s statement

that the Supreme Court would not tolerate a regulation "authoriz[ing] grants funding support for,

but barring criticism of, governmental policy." *Id.* (citing *Velazquez I*, 164 F.3d at 771). In fact,

the Policy Requirement goes further than the hypothetical regulation condemned in *BLS* and

*Velazquez I*:  it not only bars criticism of government policy but also expressly compels

recipients to espouse the government's viewpoint on a public issue.

The government's argument that compelled speech and viewpoint discrimination are

permissible here because "all the government is doing is 'defin[ing] the limits of the program'

that it is funding," Defs.' Br. at 33, fails for the same reasons it failed previously. *See AOSI*, 430

F. Supp. 2d at 261 (rejecting argument that rational basis review should apply because Policy

Requirement is a funding condition). Nor do the Guidelines save the Policy Requirement in light

of *Rust v. Sullivan*, which also did not involve compelled speech, as the Supreme Court pointedly

noted. 500 U.S. 173, 200 (1991). Indeed, the *Rust* Court implied that if the doctors there were

compelled to affirmatively endorse the government's anti-abortion position, the scheme would be unconstitutional. *Id.*[4] In addition, the *Rust* regulations did not exclude groups from receiving federal funds based on their point of view, *id.* at 196, whereas Defendants readily admit that the Policy Requirement is designed to weed out those organizations who take "conflicting positions."[5] 72 Fed. Reg. at 41,076.

In a final effort to avoid proper heightened scrutiny, the government contends that *DKT International v. USAID*, 477 F.3d 758 (D.C. Cir. 2007), has changed the legal landscape. Defs.' Br. at 20. *DKT*, of course, is not controlling; the Second Circuit did not so much as cite *DKT* in its summary order in this case. *AOSI v. USAID*, 254 F. App'x 843, 2007 WL 3334335 (2d Cir. Nov. 8, 2007). Moreover, *DKT* is simply not persuasive on the on the issue of compelled speech. *DKT* held only that compelled speech doctrine was inapplicable because DKT had received a federal grant rather than a pre-existing public benefit. 477 F.3d at 762 n.2. This reasoning ignores the Supreme Court's holding that recipients of federal subsidies are entitled to just as much First Amendment protection as recipients of pre-existing public benefits, both of "whose viewpoints on matters of public concern the government has no legitimate interest in repressing." *Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 680 (1996).

---

[4] In addition, the *Rust* grantees were not required to set up separate organizations, with separate management and governance, through which to advocate for abortion rights. *See Rust*, 500 U.S. at 180-81 (describing separation requirements).

[5] In demanding that organizations adopt an anti-prostitution policy, the government assumes that organizations without such a policy cannot be trusted to use the federal funds as the government demands. None of the Supreme Court's cases have countenanced such an assumption. The Court in *Rust* and other cases permitted the government to choose which speech to fund, requiring recipients to follow the government's terms in exchange for receiving funding. But it has not allowed the government to place blanket restrictions on which entities may apply for funds. *Cf. Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 789 F.2d 1348 (9th Cir.) (invalidating statute that barred organizations that performed abortions from receiving state funds), *aff'd mem.*, 479 U.S 925 (1986).

**B.     GHC and InterAction Are Likely to Prevail on Their Claim That the Policy Requirement and Guidelines Are Unconstitutionally Vague.**

The vagueness of the Policy Requirement, as modified by the Guidelines, continues to provide an independent ground on which to issue a preliminary injunction to protect the members of GHC and InterAction.  Defendants do not try to clarify any of the four vagueness problems to which Plaintiffs have pointed.  Pls.' Br. at 37-39.  In effect, Defendants concede that the Policy Requirement and Guidelines neither provide members with adequate notice regarding what speech is compelled or prohibited, nor provide explicit standards for Defendants to apply, as the Constitution requires.  *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

First, two and a half years into this lawsuit, the government still refuses to clarify the Policy Requirement, leaving entirely vague what a recipient organization is required to say and what it is required not to say or do.  Notably, Defendants fail to respond to Plaintiffs' statement that GHC and InterAction members "still do not know if the government views their privately funded HIV prevention programs in India, which develop networks of sex workers, as 'restricted' such that they would have to be run out of a separate affiliate."  *See* Pls.' Br. at 37.

Second, Defendants do not dispute that the Guidelines endow government actors with virtually unbounded discretion to determine whether a recipient maintains sufficient physical and financial separation from an organization that engages in restricted activities.  *See* Pls.' Br. at 38.  Nor do they attempt to distinguish Judge Leval's decision in *Transportation Alternatives, Inc. v. City of New York*, 340 F.3d  72, 78 (2d Cir. 2003), invalidating a strikingly similar scheme that allowed government actors to permit or bar speech based on ten non-exclusive factors.  *See* Pls.' Br. at 38 (discussing *Transportation Alternatives*).  Instead, they rely solely on Judge Leval's earlier *Velazquez I* decision, which upheld the LSC rule on other grounds but never addressed vagueness.  *See* Defs.' Br. at 30-31.  In fact, the Defendants have no response at all to Plaintiffs'

argument that the Guidelines' failure to state the specific activities that are prohibited renders the Guidelines unconstitutionally vague, in sharp contrast to the legal services restrictions which, in a statute and regulations, set forth discrete, explicit, specific prohibitions on, for example, class actions, attorneys fees claims, the representation of certain clients, and more.  *See* Pls.' Br. at 6.

Finally, Defendants' brief points to yet another constitutional defect.  Defendants concede that the only way for the members of GHC and InterAction to learn what level of physical and financial separation would satisfy the Guidelines would be to "attempt to comply with the guidelines by forming an affiliate and seeking funding," Defs.' Br. at 30-31, essentially forcing organizations to sacrifice their First Amendment rights in a game that requires them to guess at the government's position.  Where, as here, government imposes a substantial restriction on First Amendment activities, but fails to provide timely review procedures governed by precise, objective standards, the entire scheme is facially invalid.  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988).

> ### C.    GHC and InterAction Have Associational Standing to Assert the Compelled Speech and Vagueness Claims of Their Members.

GHC and InterAction have clear associational standing to assert the compelled speech and vagueness claims of their members because:  1) their members would otherwise have standing to sue in their own right; 2) the interests at stake in this case are germane to each organization's purpose; and 3) neither the claims asserted nor the relief requested require individualized determinations.  *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Defendants concede that the interests at stake are germane to the organizational purposes of GHC and InterAction, and that the relief requested does not require individualized determinations.  Defendants argue, however, that the associations' members lack standing to sue

in their own right, and that the claims require individualized determinations.  These arguments fail.

### 1.    GHC and InterAction Members Have Suffered Injuries in Fact Sufficient to Assert Compelled Speech and Vagueness Claims.

It is well-settled in this Circuit that to satisfy the first prong of the *Hunt* test an association need only show that one of its members has standing.  *See* Pls.' Br. at 15-16.  As Plaintiffs have demonstrated, multiple members of each association have standing to assert compelled speech and vagueness claims because they:  1) have adopted policies that they otherwise would not have adopted; and 2) do not know what speech is compelled, and what speech and activities are prohibited by, the Policy Requirement and Guidelines.  *Id.* at 15-17, 37-38.  Defendants do not put forward any evidence to dispute, or even call into question, any of these facts.[6]

### 2.    The Compelled Speech and Vagueness Claims of InterAction and GHC Do Not Require Individualized Determinations.

The compelled speech and vagueness claims of InterAction and GHC do not require individualized determinations, because they turn on the way Defendants apply the Policy Requirement and Guidelines to all the members.  Defendants' brief does not address the determinations necessary to adjudicate the compelled speech and vagueness claims, arguing only for individualized determinations in the context of applying the *BLS* adequate alternative test.[7] *See* Defs' Br. at 12-14.  Nor do Defendants attempt to explain why this case is not governed by *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), in

_____

[6] Defendants' assertion that the members of GHC and InterAction do not have standing unless and until they suffer the vast burdens of setting up affiliates under the Guidelines, which has no relevance to Plaintiffs' standing to assert compelled speech and vagueness claims, is addressed below at 15.
[7] Defendants' argument that individualized determinations are necessary to support a claim under the *BLS* adequate alternative test is addressed below at 16-17.

which the Supreme Court found that an organization of law schools had associational standing to bring an as-applied claim that a military recruiting requirement violated the compelled speech doctrine. *See* Pls.' Br. at 18-19. Consequently, for the reasons stated in Plaintiffs' initial brief, GHC and InterAction have standing to pursue their compelled speech and vagueness claims.

## II. GHC AND INTERACTION ARE LIKELY TO SUCCEED ON THEIR CLAIM THAT THE POLICY REQUIREMENT AND GUIDELINES FAIL HEIGHTENED SCRUTINY.

### A. The Policy Requirement and Guidelines Fail Both Narrow Tailoring and the Adequate Alternative Channels Test.

In addition to Plaintiffs' compelled speech and viewpoint discrimination claims, Plaintiffs have shown that the Policy Requirement and Guidelines impose an unconstitutional condition on their ability to speak freely with their own private funds. In the Decision and Order of May 9, 2006, this Court applied heightened scrutiny and held that the Policy Requirement was not "'narrowly tailored to fit Congress's intent.'" *AOSI*, 430 F. Supp. 2d at 267. Unable to put forward any legitimate government interest furthered by the draconian nature of the Guidelines, Defendants argue that the narrow tailoring test no longer applies, relying heavily on *BLS*.[8] But as Plaintiffs discuss in Section I.A, *supra*, *BLS* makes clear that heightened scrutiny applies to a restriction that – like the one at issue here – compels funding recipients to speak the government's view on a contested issue of public policy. Moreover, in its Summary Order, the Circuit did not direct this Court to alter its analysis in any way. *AOSI v. USAID,* 254 F. App'x 843, 2007 WL 3334335 (2d Cir. Nov. 8, 2007).

---

[8] Defendants also rely on the D.C. Circuit's ruling in *DKT*. That ruling, which is not binding on this Court, did not address the constitutionality of the Guidelines (which were issued after the ruling), and assumed, incorrectly, that Defendants would allow funding recipients to operate through a wholly controlled subsidiary. Pls.' Br. at 27 n.7. Moreover, as Plaintiffs note, *supra* at 5, the Second Circuit declined to rely on *DKT* in any way in its summary order in this case.

*BLS* also makes clear that even separation requirements that neither compel speech nor discriminate based on viewpoint may not "impose[ ] extraordinary burdens that impede grantees from exercising their First Amendment rights, create[ ] prohibitive costs of compliance, and demand[ ] an unjustifiable degree of separation of affiliates." *BLS*, 462 F.3d at 232. The panel further stated that "[s]ubstantially burdening an organization's ability to set up an affiliate violates the standard in [*Velazquez I*] that require[s] not simply the existence of an alternative channel but the existence of an 'adequate' one. By definition, an alternative is inadequate if the government substantially or unduly burdens the ability to create the alternative." *Id.*

The Policy Requirement and Guidelines fail both the narrow tailoring test and the *BLS* adequate alternative channel test. As Plaintiffs explain below, the Guidelines require far more separation than is reasonably required to satisfy the government's legitimate interests. They do not provide an alternative channel – much less an adequate one – because they mandate such extreme separation that the grantee organization cannot speak through its affiliate. Moreover, Defendants have not even attempted to rebut any of Plaintiffs' detailed factual submissions concerning the massive burdens imposed by the Guidelines, and they have not provided any justifications for burdening members' speech to such an unprecedented degree.

> **1.     The Policy Requirement, Even as Modified by the Guidelines, Continues to Impose a Blanket Ban on the Members' Ability to Speak Through an Affiliate.**

As Plaintiffs have argued, the Guidelines continue to impose a blanket ban on speech because they do not permit recipients to advance their own speech through affiliates that they control through overlapping boards and management. *See* Pls.' Br. at 11, 26-28. Defendants respond with the startling assertion that the Guidelines respect the First Amendment by allowing

a wholly separate entity, over whom recipients exercise no control, to utter its own speech. Defs.' Br. at 27-28.

In support of this counterintuitive idea, Defendants assert that the Supreme Court did not discuss control in *Rust v. Sullivan*, 500 U.S. 173 (1991); *FCC v. League of Women Voters*, 468 U.S. 364 (1984); or *Regan v. Taxation With Representation,* 461 U.S. 540 (1983).[9] In fact, however, the Court's ruling in *Rust* depended on the finding that the grantee itself remained free to engage in the otherwise forbidden speech. 500 U.S. at 196-97, 199 n.5. And in *Regan* the Court's holding rested on the assumption that a tax-exempt organization could set up a closely affiliated entity, over which it exercised control, to engage in the otherwise forbidden lobbying. *See* 461 U.S. at 544-46; *see also League of Women Voters*, 468 U.S. at 400-01 (explaining *Regan* in these terms). Rather than recognize that such control is constitutionally mandated, Defendants contemptuously label these arrangements "shell companies." *See* Defs.' Br. at 27.

Defendants also incorrectly characterize the history of the LSC regulation when they argue that the *LSC* cases did not require that LSC grantees be able to control their affiliates. *Id.* at 28 & n.13. As the district court in *Velazquez* explained:

> [T]he very purpose for the adoption of the [separation] rules was to provide a vehicle for the unrestricted use of non-federal funding of legal services for the poor in order the save the Act's constitutionality. The history of the evolution of the final … rules … reflects that they escaped constitutional interdiction because, unlike the interim rules, they provided that "LSC-funded legal aid societies will be able to *control* affiliates who care for the poor in areas from which the regulations restrict the societies."

*Velazquez v. LSC*, 349 F. Supp.2d 566, 611 (E.D.N.Y. 2004) (quoting *Velazquez v. LSC*, 985 F. Supp. 323, 336 (E.D.N.Y. 1997)) (emphasis added), *rev'd on other grounds*, 462 F.3d 219 (2d Cir. 2006).

---

[9] Of course, the regimes at issue in *Rust* and *Regan* did not seek to deprive funding recipients of control over their privately funded speech. *See* Pls.' Br. at 27.

In addition to defending an absolute prohibition on funding recipients controlling privately funded speech by their affiliates, Defendants hedge their bets by arguing that the restriction on overlapping management and governance does not in fact absolutely ban such control. Rather, they claim, the exercise of such control is just one of several factors Defendants will take into account in deciding whether a recipient is violating the Policy Requirement. *See* Defs.' Br. at 25-26. At the same time, however, Defendants insist that funding recipients must set up an affiliate and apply for funding in order to obtain guidance about what level of separation will suffice. *See* discussion *supra* at 7. For an organization to justify the expense of setting up a new organization, applying for the necessary permissions in the host country, and preparing an application for funding from Defendants, it must be confident that its application will meet with Defendants' approval. Thus, under the Defendants' scheme, grantees must not only affirmatively embrace some degree of physical separation (an action already constituting a violation of their First Amendment rights), they must choose the configuration with the maximum possible amount of separation. *See* Pls.' Br. at 27 n.6, 28-30.

> **2.      Defendants Have Not Put Into Dispute Plaintiffs' Allegations Regarding the Burdens the Policy Requirement and Guidelines Impose on All InterAction and GHC Members.**

In their moving papers, Plaintiffs described in great detail the severe burdens that the Guidelines impose on InterAction and GHC members, all of which would result in long delays, vast logistical burdens, and great expense for grantees attempting to open and staff a new entity. *See* Pls.' Br. at 9-13, 30. Regardless of which countries the members operate in, all members will face severe burdens on their ability to raise funds from private and government sources as a

result of the legal separation and dual office requirements. Pls.' Br. at 10-11, 13.[10]  All will find

it impossible to hire the best candidate as the person in charge of its country operations.

Declaration of Dan Pellegrom, dated Feb. 7, 2008, ¶ 72-75.  All will have to comply with the

physical and financial separation factors to the maximum extent, because they do not know how

much weight the Defendants will place on each.  *See* discussion *supra* at 11-12.

Moreover, they will face the following set of nearly insurmountable burdens that are

common throughout the developing world:

- difficulty registering new legal entities with often hostile bureaucracies;
- compliance with visa and work permit rules for new employees;
- the expenses of obtaining new, separate office space and importing new, separate equipment;
- cumbersome regulations concerning the opening of bank accounts and transfer of foreign funds;
- difficulty obtaining tax-exempt status for the new organization; and
- the likelihood of attracting the suspicion of foreign police and intelligence authorities.

*See* Decl. of Mark Sidel, dated Feb. 8, 2008, ¶¶ 11-26.  Notably, many of these burdens are

confirmed by reports written by Defendant USAID and by the State Department.  *See* Pls.' Br. at

10, 12-13; Sidel Decl. ¶¶ 33-34, 36-37, 40-43, 45, 49, 57-58, 61.

Despite operating USAID programs throughout the developing world, Defendants have

not questioned any of Plaintiffs' specific factual assertions, submitted one affidavit contesting

any of the facts, sought an evidentiary hearing, or even – two and a half years into this case –

sought discovery.  They complain that the evidence is untested but refuse to test it.  *See*, *e.g.*,

Defs.' Br. at 29.  Where, as here, there are no facts in dispute, "a defendant cannot block

---

[10] The only attempt Defendants make to put these facts into dispute is to assert, correctly, that
organizations need not register as a "private voluntary organization" ("PVO") in order to receive Global
AIDS Act funds. Defs.' Br. at 30 n.14.  They do not deny, however, that the PVO rules, and other rules
cited by Plaintiffs, would disqualify a new affiliate from receiving certain other funds from the
Defendants, or that a new affiliate would be at a significant disadvantage in competing successfully both
for Global AIDS Act funds and for funds from private sources.  *See* Pls.' Br. at 10-11.

issuance of an injunction simply by refusing to submit evidence on contested fact issues."
*Guardians Ass'n of New York City Police Dept., Inc. v. Civil Serv. Comm'n*, 490 F.2d 400 (2d
Cir. 1973).  *See also Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir.
1988) (where facts had been clearly demonstrated and/or not controverted, and Defendants had
not sought evidentiary hearing, preliminary injunction on basis of affidavits and prior hearings
was appropriate).

### 3.    Defendants Have Not Offered Any Valid Justification for the Harshness of the Guidelines.

Defendants have not offered any valid justification for the harshness of the Guidelines.
Instead, they argue only that the Guidelines are modeled on the LSC regulation, and that they are
designed to insure that affiliations "do not threaten the integrity of the Government's programs
and its message ...."  *See* Defs.' Br. at 4-5.  As Plaintiffs have previously argued, there is no
evidence that such draconian measures are necessary to avoid confusion of the Defendants'
message.  Pls.' Br. at 31-32.  Moreover, Defendants have offered no explanation as to why
measures that are sufficient to prevent the government from endorsing grantees' religious
message are not sufficient to prevent the garbling of Defendants' anti-prostitution message.  *See
id.*[11]  Nor do they attempt to explain why they require the members of GHC and InterAction, but
not certain other Global AIDS Act funding recipients, to abide by the Guidelines.  *See id.* at 26.

_____

[11] Instead of responding to this factual point, Defendants merely note that an Establishment Clause claim
was rejected in *Brooklyn Legal Services. See* Defs.' Br. at 28.  However, Plaintiffs raise the faith-based
regulations here not to make an Establishment Clause claim but rather as evidence, in the form of
statements by the Defendants, that undermines Defendants' conjectural claims that extreme separation is
warranted to prevent government endorsement of a forbidden message.

**B.    InterAction and GHC Have Associational Standing Under the Narrow Tailoring and Adequate Alternative Channel Tests.**

In addition to their standing to assert compelled speech and vagueness claims, *see supra* at 7-9**,** GHC and InterAction have standing to advance their unconstitutional conditions claims under both the narrow tailoring and adequate alternative channel tests.  First, each organization has multiple members that are unable to speak freely with their private funds.  Second, the unconstitutional conditions claims do not require the individual participation of members, all of whom suffer from common burdens imposed by the Guidelines.

**1.    GHC and InterAction Members Have Suffered Injury in Fact Sufficient to Assert an Unconstitutional Conditions Claim.**

As discussed above, the associations satisfy the first prong of the *Hunt* test if just one member of each has suffered an injury in fact.  Plaintiffs' uncontested declarations demonstrate that several members have had to censor their privately funded speech, and that the Guidelines impose such vast burdens that they do not provide an opportunity to speak freely with private funds.  *See* Pls.' Br. at 7-13, 16-17.  Defendants nonetheless argue that the only way a member would have standing to challenge the onerous Guidelines is by actually establishing or attempting to establish an affiliate.  Defs.' Br. at 10-11.  This argument, which essentially demands that association members exhaust an administrative process before challenging the very burdens that the administrative process imposes on them, flies in the face of the Supreme Court's First Amendment jurisprudence.  Where judicial protection of First Amendment rights is at issue, the Supreme Court has repeatedly refused to require speakers to exhaust administrative licensing schemes, especially when, as here, the licensing schemes are informal, standardless and wholly discretionary.  *Watchtower Bible & Tract Soc'y v. Village of Stratton*, 536 U.S. 150 (2002); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-760, 769-72 (1988); *Freedman v.*

*Maryland*, 380 U.S. 51, 58-60 (1965*); Staub v. Baxley*, 355 U.S. 313, 319-20, 322-25 (1958);

*Cantwell v. Connecticut*, 310 U.S. 296, 304-07 (1940); *Lovell v. Griffin*, 303 U.S. 444, 449-53

(1938).  Consequently, the members have standing.

> **2.    The Unconstitutional Conditions Claim of GHC and InterAction Does Not Require Individualized Determinations.**

The claim that the Policy Requirement and its Guidelines substantially or unduly burden

the members of GHC and InterAction does not require individualized determinations, because

the Policy Requirement and Guidelines impose burdens common to all members, including

fundraising barriers and difficulties registering, financing and staffing newly created, legally

separate entities.  *See* discussion *supra* at 12-13.  Defendants' claim to the contrary ignores those

common burdens.  Furthermore, the burdens that Defendants purport will require individualized

determinations actually require determinations of the laws and government practices concerning

nonprofit operations in the developing world, not the particular situation of individual

members.[12]  For example, there is no need to examine the characteristics of particular members

in order to recognize that the government of India statutorily bars organizations from opening a

second bank account to accept non-government funds, that registering a non-profit in Bangladesh

takes months or years, or that bringing a second set of foreign personnel and equipment into

Mozambique will be extremely difficult.  *See* Pls.' Br. at 10, 12; Sidel Decl. ¶¶ 52-53.

Accordingly, *Rent Stabilization Association v. Dinkins*, 5 F.3d 591 (2d Cir. 1993), on

which Defendants rely, is inapplicable.  In that case, a group of landlords challenged city rent

regulations on takings grounds.  There, the plaintiff associations lacked standing because an

---

[12] Defendants argue that individualized determinations are required regarding Plaintiffs' allegations that "non-governmental organizations must register before operating, and that to do so they must navigate onerous bureaucracies," and that "some countries may refuse to issue visas or work permits for separate organization personnel; that in some countries it may be difficult to open separate bank accounts; and that in some countries it may be difficult to obtain separate offices and equipment."  Defs.' Br. at 13-14.

element of the takings claim required a determination of each landlord's "particular return based on a host of individualized financial data." *Id.* at 596. That case is inapplicable where, as here, there are facts common to all members sufficient to support the plaintiffs' claims. *See National Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*, 990 F. Supp. 245, 250 (S.D.N.Y. 1997) (holding *Rent Stabilization Association* inapplicable to association's standing to bring antitrust claim because association-wide facts common to all members could show that they were in competition with a particular bookseller).

Moreover, even if individualized determinations were necessary, associational standing would still be appropriate in order to avoid chilling the speech of association members, many of whom fear the consequences of proceeding with a lawsuit in their own name against their major funder. Pls.' Br. at 18-22. In arguing against relaxing the third prong of the *Hunt* test in the context of associational standing, Defendants simply ignore this Court's decision in *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 468 (S.D.N.Y. 2004) (Marrero, J.). *See* Pls.' Br. at 20 (discussing *CLASH*).

## III.    GHC's Claims Are Not Res Judicata.

GHC and DKT International are not precluded by *res judicata* from seeking injunctive relief here. A party is precluded from asserting a claim in a subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000). Defendants' *res judicata* claim fails this test. First, there is no privity between DKT and GHC. Second, while the *DKT* court did reject compelled speech, viewpoint discrimination and unconstitutional conditions challenges to the Policy

Requirement,two of the claims here simply were not before that court: the vagueness and unconstitutional conditions challenges to the Policy Requirement as modified by the Guidelines.[13]

### A.    There Is No Privity Between DKT and GHC.

DKT is not, and has never been, an agent of GHC. Privity exists for *res judicata* purposes only if the interests of the person alleged to be in privity were "represented [in the prior proceeding] by another vested with the authority of representation." *Alpert's Newspaper Delivery, Inc. v. N.Y. Times Co.,* 876 F.2d 266, 270 (2d Cir. 1989). The party alleging the affirmative defense of *res judicata* has the burden of showing that privity exists. *Monahan*, 214 F.3d at 285. Defendants cannot meet this burden, because GHC did not and never has invested DKT with the authority of representation. Decl. of Nils Daulaire, April 4, 2008, ¶ 5. Indeed, in August 2005, when DKT filed suit in the D.C. District Court, DKT was not even a member of GHC. *Id.*, ¶ 4.

The cases Defendants cite are all distinguishable because all contained actual evidence of privity, while Defendants can point to nothing more than the fact that the same public interest firm – which is often asked to contribute its expertise in First Amendment litigation[14] – is counsel in both cases. In contrast, in *Ruiz v. Commissioner of Department of Transportation of City of New York*, the strong evidence of privity included the fact that the parties in one case had agreed to amend the complaint in the other case, and that the claims in the two cases were

---

[13] Plaintiffs concede that the *DKT* court's ruling on viewpoint discrimination and compelled speech is *res judicata* as to GHC member DKT. Thus, if this Court issues a preliminary injunction to GHC based solely on those claims, DKT should not benefit from it  However, the Guidelines had not been issued by the time the *DKT* court ruled. Consequently, if the Court issues a preliminary injunction to GHC based on the vagueness or unconstitutional conditions challenges to the Policy Requirement as modified by the Guidelines, DKT should be protected by that injunction.

[14] *See, e.g., N.Y. State Bd. of Elections v. Lopez Torres*, -- U.S. --, 128 S. Ct. 791 (2008); *McConnell v. FEC*, 540 U.S. 93 (2003); *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002); *Velazquez v. LSC*, 531 U.S. 533 (2001).

identical.  858 F.2d 898, 903 (2d Cir. 1988).[15]  In *Alpert's Newspaper Delivery Inc. v. N.Y. Times Co.*, the evidence showed that the same organization was the "admitted mastermind" and funder of both actions.  876 F.2d at 270.  In *Monahan*, members of a union were in privity with the union's president because he had earlier brought suit and sought relief on their behalf in his capacity as President of the union.  214 F.3d at 280, 285.[16]

### B.    The Vagueness and Unconstitutional Conditions Challenges to the Policy Requirement as Amended by the Guidelines Were Not and Could Not Have Been Asserted in DKT.

GHC's vagueness and unconstitutional conditions challenges to the Policy Requirement as amended by the Guidelines are not *res judicata* for another reason as well:  the Guidelines had not been issued when the D.C. Circuit ruled.  "Whether or not the first judgment will have preclusive effect depends in part on whether . . . the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."  *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).  Since the Guidelines had not yet been issued when the D.C. Circuit ruled, the "facts essential" to the vagueness and unconstitutional conditions challenge to the Policy Requirement as amended by the Guidelines could not have been before that court.  In fact, the *DKT* opinion assumed – incorrectly, as it turned out – that Defendants would permit recipients to engage in the forbidden speech through "subsidiaries" formed through "a simple corporate reorganization."  *See* discussion *supra* at 9 n.8.

---

[15]  Moreover, *Ruiz* is inapplicable, because it applied state, not federal, preclusion law.  *See Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 608 n.5 (S.D.N.Y. 1990) (distinguishing *Ruiz* as inapposite in a case applying federal preclusion law).

[16]  Defendants' additional claim that that GHC is "forum shopping," or is only attempting to join this litigation because it was denied relief in another district, is baseless, because GHC attempted to join this litigation prior to the D.C. Circuit's determination in *DKT*, at a time when preliminary injunctions were in place in both D.C. and in this District.  *See* Pls.' Br. at 3.

## <u>CONCLUSION</u>

For the reasons stated herein, and in Plaintiffs' brief dated February 8, 2008, this Court should grant Plaintiffs' motion to file a Second Amended Complaint, and the motion of GHC and InterAction for a preliminary injunction.

April 7, 2008

Richard A. Johnston*
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

David W. Bowker (DB 3029)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

* admitted *pro hac vice*

/s/Rebekah Diller
Laura K. Abel (LA 6831)
Rebekah Diller (RD 7791)
David S. Udell (DU 4762)
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, NY 10013
(212) 992-8635

*Attorneys for Plaintiffs*

20